DECIDED IN

THE SUPREME COURT

OF THE

STATE OF UTAH.

FEBRUARY TERM, 1905.

GEORGE ROTH, Respondent, v. DAVID ECCLES, Appellant.

No. 1571.   (79 Pac. 918.)

1. **Master and Servant: Personal Injuries: Safe Place to Work.**

   Where a servant has as good an opportunity as the master to know the dangers connected with his employment, and makes no complaint, he cannot recover for injuries on the ground that the master did not furnish him a safe place to work.[1]

2. **Same:**

   An employer is not bound to furnish his employee an absolutely safe place to work, but if he furnishes a reasonably safe place, under all the circumstances, and conducts his business in accordance with the ordinary usages of the employment, he performs his duty.[2]

3. **Same: Evidence: Question for Jury.**

   In an action by a servant for injuries resulting from being struck by a piece of brick which broke as it was being tossed to a brick-mason by his helper, evidence *held* insufficient to justify submission of the issue of defendant's negligence to the jury.

---

[1] Christienson v. R. G. W. R. Co., 27 Utah, 132, 74 Pac. 876.
[2] Fritz v. Electric Light Co., 18 Utah, 493, 56 Pac. 90.

(Decided March 7; 1905.)

Appeal from the First District Court, Cache County.—
*Hon. Charles H. Hart, Judge.*

Action to recover damages for personal injuries
alleged to have been received through the negligence
of the defendant. From a judgment in favor of the
plaintiff, the defendant appealed.

REVERSED.

*Lindsay R. Rogers, Esq.,* and *John A. Street, Esq.,*
for appellant.

Appellant is sued in this action for negligence
and can only be held liable where there is some evi-
dence tending to show his negligence.

Negligence is a relative term and is well defined
by the Supreme Court of the United States, as follows:

"Negligence is the failure to do what a reasonable
and prudent person would ordinarily have done under
the circumstances of the situation, or doing what such
a person under the existing circumstances would not
have done. The essence of the fault may lie in omis-
sion or commission. The duty is dictated and meas-
ured by the exigencies of the occasion." Railroad v.
Jones, 95 U. S. 439 (441).

Applying this definition to the undisputed facts,
as shown by the record in this case, it cannot be well
said that the appellant either did or failed to do any-
thing, under the circumstances of the situation, which
a reasonable or prudent man would have done or
would not have done under the same circumstances.

What did appellant, under the circumstances of
the situation, do or fail to do?

He failed to cause the window opening to be
boarded up or otherwise guarded, after the frame was
set, and before the sash was put in, and while the brick-

mason was turning the arch over the window and while the walls were being laid up, so that a brick could not possibly fall through to the ground, and this was the way, manner and method commonly and ordinarily pursued in the building and brickmasons' trade generally, and was the ordinary usage of the business or trade.

The boarding up of the opening would, of course, have prevented the brick from falling through, and the accident and injury to respondent avoided, but such a precaution was not of common use. Under the law appellant was not required to use the newest or latest appliances, or to take precautions not in common use under the same situation and circumstances.

Under the law it was appellant's duty to provide the same kind of appliances, or appliances equally as safe, and to take the same precaution against risk and injury to his servants as those in general use by men of ordinary prudence who are engaged in the same kind of business. Boyle v. R. R., 25 Utah, 420 (431); Pool v. S. P. Co., 20 Utah, 210; 1 Sherman & Redfield On Negligence, sec. 194.

This court has quite recently in a most carefully considered opinion stated the law to be as follows:

"It is further contended that defendant's failure to guard, protect and insulate the dynamos was negligence.

"The machinery and appliances used by defendant in its electric light plant before and at the time of the accident were of the kind commonly and ordinarily used in other electric light plants, and the manner and methods of running and operating them were the same. The rule has become elementary that where a master has furnished the servant with machinery and appliances reasonably safe and suitable and such as are in general use for carrying on the same kind of business as that in which the master is engaged, and the servant is injured without any fault of the master, the master cannot be held liable because he failed to make use of some

attachment or special device that might have rendered the operating of the machinery less dangerous and the accident thereby might have been avoided.

"In the case of Titus v. Railway Co., 136 Pa. St. 618, which is a well considered case, the court said: 'To show that a practice is dangerous does not prove it to be negligent. Some employments are essentially hazardous, and it by no means follows that an employer is liable because a particular accident might have been prevented by some special device or precaution not in common use. All the cases agree that the master is not bound to use the newest and best appliances. He performs his duty when he furnishes those of ordinary character and reasonable safety, and the former is the test of the latter; for in regard to the style of the implement, or nature of the mode of performance of any work, reasonable safety means according to the usages, habits and ordinary risks of the business.

"Absolute safety is unattainable and employers are not insurers. They are liable for the consequences, not of danger, but of negligence; and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is held to a higher degree of skill than the fair average of his trade or profession, and the standard of due care is the conduct of the average prudent man. The test of negligence as to employers is the same; and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual way commonly adopted by those in the same business, is a negligent way, for which liability shall be imposed. Juries must necessarily determine the responsibility of individual conduct, but they cannot be allowed to set up a standard which shall in effect dictate the customs or control of the business of a community.' " Fritz v. Electric Light Co., 18 Utah, 493 (500-501).

Applying these principles of law to the undisputed facts as shown by the record in this case, it is earnestly

contended that appellant was not guilty of negligence and the learned trial judge erred in not instructing the jury to return a verdict of no cause of action.

"Juries must necessarily determine the responsibility of individual conduct, but they cannot be allowed to set up a standard which shall in effect dictate the customs or control of the business of a community." Fritz v. Electric Light Co., supra.

*Geo. Q. Rich, Esq.,* and *F. K. Nebeker, Esq.,* for respondent.

It is true that absolute safety for employees is unattainable and that no such insurance is required of the master against danger, and that juries while determining the responsibility of individual conduct, are not to set up any fanciful standards by which to judge the conduct of the master.

Such should be the law. But customs are not permitted to run counter to the elementary principles and rules of negligence.

The Supreme Court of this State has laid down very distinctly and very definitely the elementary principles of negligence which enter into this case; and in the case of Pool v. Railroad, 20 Utah 215, cited by appellant, the first branch of our case at bar is so plainly covered by the opinion therein, that we beg leave to quote somewhat extendedly, from the same. The court said:

"1. As to the duties which the master owes the servant. It is well settled that the contract of employment imposes upon the master the implied obligation not to expose the servant to dangers which the master by the exercise of reasonable care, skill and prudence, could avert. Northern Railroad v. Peterson, 162 U. S. 353; Aough v. Railroad, 100 U. S. 113-117; Wabash Railroad v. Daniels, 107 U. S. 454-459; Sherman and Redfield's Negligence, sec. 189 and cases cited.

"2. Thompson on Neg., p. 972, sec. 3, and the nu-

merous cases cited in note 1; Bailey's Mast. Liability, p. 1, and note.

"Among the implied obligations so imposed upon the master, enumerated by the authorities just quoted, are the following:

"1. That he shall provide reasonably suitable means and appliances to enable the servant to do his work as safely as the hazard incident to the employment will permit;

"2. That he will provide a suitable and reasonably safe place for doing the work to be performed by the servant.

"The master cannot escape liability for injuries inflicted upon his servant for the negligent discharge of these duties, by entrusting their performance to another. These duties are personal duties of the master which can in no way be delegated so as to relieve him from responsibility. A failure to perform these duties, or any negligence in their performance is the negligence of the master for which he is liable. Such negligence is not a hazard necessarily attendant upon the occupation of the servant. Nor is it one in which he, in legal contemplation, is presumed to risk in the service of the master."

BARTCH, C. J.—This action was brought to recover damages for personal injuries alleged to have been received through the negligence of the defendant. From the evidence it appears substantially that on October 30, 1901, the day on which the accident which resulted in the injury complained of occurred, the defendant was erecting a large brick building at Logan, Utah, to be used for a sugar factory; that on that day, and for about two months prior thereto, the plaintiff was in his employ, and was working at the building in the capacity of "mason's helper;" that when the accident happened the north wall of the building had been built up with brick to nearly the top of the second story—to the height of from 25 to 30 feet—and the window frames

had been set, but the apertures had been left open; that all this work was done in the "usual and ordinary way in which it is always done in the trade;" that it was the duty of the plaintiff and others to convey mortar and bricks, with wheelbarrows, to an elevator, on which the same were carried to the second story, where the bricks were pitched by fellow workmen from hand to hand to the brickmasons, in the usual and ordinary way; and that at the time of the injury the plaintiff was wheeling mortar from the mortar box, situate outside the building, 10 to 14 feet from the north wall, opposite one of the windows, and while working at the mortar box a brick being pitched from hand to hand by other workmen standing on a scaffold at the second story, where the brickmasons were at work, broke into two pieces, and one of the pieces, falling and rolling on the scaffold, went through the aperture of the window and struck him on the head, inflicting the injury of which he complains. The evidence also shows that the plaintiff was aware of the manner in which the work both inside and outside of the building was carried on and knew that masons were at work above the aperture through which the brick fell. It is further shown that the work was conducted in the manner usual and ordinary in the trade. Under this and other evidence of similar import a verdict was returned, and judgment entered thereon in the sum of $15,000 in favor of the plaintiff.

Upon this appeal it is insisted that the court erred in refusing to instruct the jury to return a verdict of no cause of action, as requested by the appellant. The contention is that there is no evidence in the record showing that the defendant was guilty of negligence, under the circumstances, on the occasion in question. After careful examination of the pleadings and the proof, we are of the opinion that this contention is well founded.

The evidence clearly shows that at the time of the accident the work of construction was carried on in the manner usual and ordinary in the construction of

brick buildings. It is true, the aperture through which fell the brick that caused the injury had not been closed up, but it is shown by the proof that it is customary in the trade to leave such apertures open while the construction of the walls of the building is going on. The employe had worked there for a considerable length of time prior to the accident; knew how the work was being carried on; saw the scaffolds and the height of the wall; knew the bricks were being pitched from hand to hand by his co-employes, that brickmasons were at work over the aperture in question, and that the aperture was open; was aware of the location of the mortar box, and its distance from the wall; and, with full knowledge of all these things, worked there voluntarily, without, so far as shown by the record, making any objection either to the manner of the performance of the work by himself or his co-employes, or to the open window, or the nearness of the mortar box to the wall. His opportunities to observe and know the dangers connected with the operations were just as good as were those of the employer. Under such circumstances the employe cannot be heard to complain that the master did not furnish him a safe place within which to perform his labor. Christienson v. R. G. W. R. Co., 27 Utah, 132, 74 Pac. 876.

The employer was not bound to furnish the employe an absolutely safe place to work. A reasonably safe place, under the circumstances, was all that was required. The falling of the brick was but an incident to the employment, the danger of which the employe, who, in the absence of proof to the contrary, we must assume to be a man of ordinary understanding, with requisite knowledge of his business, could foresee as well as could his employer. The mere fact that the employer did not close up the aperture, or do some special thing which would have prevented the accident, did not in itself render him guilty of actionable negligence. Nor does the mere showing that the doing or not doing of a thing is dangerous prove it to

be negligent. If the employer provides a reasonably safe place under the circumstances, furnishes reasonably safe appliances suitable to the employment, and conducts the business in accordance with the ordinary usages and customs of the trade or employment, he performs his duty to the employe in this regard. In Fritz v. Electric Light Co., 18 Utah, 493, 56 Pac. 90, this court said: "It is further contended that defendant's failure to guard, protect, and insulate the dynamos was negligence. The machinery and appliances used by defendant in its electric light plant before and at the time of the accident were of the kind commonly and ordinarily used in other electric light plants, and the manner and methods of running and operating them were the same. The rule has become elementary that where a master has furnished the servant with machinery and appliances reasonably safe and suitable, and such as are in general use for carrying on the same kind of business as that in which the master is engaged, and the servant is injured without any fault of the master, the master cannot be held liable because he failed to make use of some attachment or special device that might have rendered the operating of the machinery less dangerous, and the accident thereby might have been avoided." Bailey, Mast. Liab., p. 145; Titus v. Railway, 136 Pa. 618, 20 Atl. 517, 20 Am. St. Rep. 944.

We are of the opinion that the court ought to have given the peremptory instruction requested. The case must be reversed, with costs, and remanded to the lower court for further proceedings in accordance herewith. It is so ordered.

McCARTY and STRAUP, JJ., concur.