## GRANDIN v. SOUTHERN PAC. CO.[*]

### No. 1709. Decided April 19, 1906 (85 Pac. 357).

1. MASTER AND SERVANT—RISKS ASSUMED—KNOWLEDGE OF SERVANT OF DANGER.—In the absence of evidence to the contrary, it will be assumed that a person employed by a carrier to load and unload cars was a man of average understanding, capable of appreciating the obvious dangers connected with the duties he undertook to discharge.

2. SAME.—A person employed by a carrier to load and unload cars was injured while assisting in unloading battery houses from a flat car. At the time of the accident, he had been in the service of the carrier for three months, knew the nature of the work, and knew that there was more or less risk of injury incident to the service. *Held*, that the fact that he had not assisted in unloading battery houses prior to the accident was immaterial on the question of his assumption of risk, because the nature of the service suggested that the employees must at times handle materials and appliances different from those usually received and handled.

---

[*]Volenti non fit injuria as a defense to actions by injured servants, see note, 47 L. R. A. 161.

3. SAME.—Where employees engaged in unloading cars, assisted in constructing the means necessary to perform the service, and continued without objection to perform the work according to the method adopted by them, or the employer, the employees assumed the risks of danger incident thereto, including the negligence of co-employees; the employer exercising proper diligence in the selection and retention of co-employees.

4. SAME.—A labor gang employed by a carrier to load and unload cars was engaged in unloading battery houses from a flat car, when a member of the gang was injured. To perform the work a temporary platform was constructed at the car, and from it two wooden skids were placed to form an incline to the ground. The members of the gang constructed this appliance, and the employee who was injured knew about the construction and did not object to its insufficiency. The danger was obvious. *Held*, that the injured employee assumed, as a matter of law, the risks incident to the performance of the service.[1]

APPEAL from District Court, Second District; J. A. Howell, Judge.

Action by Carl J. Grandin against the Southern Pacific Company. From a judgment for plaintiff, defendant appeals.

REVERSED.

*P. L. Williams* and *Geo. H. Smith* for appellant.

*T. D. Johnson* and *Thos. Maloney* for respondent.

If no demand for a jury be made in writing or orally, or if a party, who has made demand properly, fail to appear at the trial, in either event, there will be a waiver of the jury. These provisions of the statute are not in violation of the Constitution, but are the proper exercise of legislative power, and are, therefore, valid." (*Farwell v. Murray,* 104 Cal. 464; *Conneau v. Geis,* 73 Cal. 176; *Hillman v. McWilliams,*

---

[1] Dunn v. Railroad, 28 Utah 478, 80 Pac. 311; Roth v. Eccles, 28 Utah 456, 79 Pac. 918; Christianson v. R. G. W. Ry. Co., 27 Utah 132, 74 Pac. 876; 101 Am. St. Rep. 945; Higgins v. Southern Pacific Co., 26 Utah 164, 72 Pac. 690.

70 Cal. 447; *Knight v. Farrell*, 113 Ala. 258; *Plank Road Co. v. Hopkins*, 69 Mich. 10; *Chaslon v. Martin*, 81 N. C. 51.; *Sale v. Miggett*, 25 S. C. 72; *Gleaves v. Davidson*, 85 Tenn. 380.)

In the case at bar the plaintiff had already testified that he could not stand the work and had quit. The other witness testified that the wheels of the truck twisted. Why the plaintiff could not stand the work, why he quit, and why the wheels of the truck twisted, were questions for the jury to determine. To permit witnesses to express their opinions upon these matters was prejudicial error. (*Black v. Bell Tel. Co.*, 26 Utah 451; *Jensen v. McCormick*, 26 Utah 142; *Nichols v. Railroad*, 25 Utah 240; *Stoll v. Mining Co.*, 19 Utah 271; *Woolley v. Maynes, Wells Co.*, 18. Utah 232; *Reese v. Mining Co.*, 17 Utah 489; *Saunders v. Southern Pacific Co.*, 15 Utah 334; *Hamer v. Bank*, 9 Utah 215; *Forwarding Co. v. Insurance Co.*, 8 Utah 41.)

Whatever hazard was connected with the work was equally open and obvious to him as to the defendant, if not more so, and if there was anything unsafe about the entire arrangement, the exercise of ordinary care would have revealed it to the plaintiff. In the absence of proof to the contrary, we are bound to assume that he was a man of average intelligence, understanding and knowledge of things about him. He therefore assumed the risk. (*Dunn v. Railroad Co.*, 28, Utah 478; *Roth v. Eccles*, 28 Utah 456; *Christensen v. Railroad*, 27 Utah 132; *Higgins v. Southern Pacfic Co.*, 26 Utah 164.)

"When the servant assents to occupy the place prepared for him and incur the dangers to which he will be exposed thereby, having sufficient intelligence and knowledge to enable him to comprehend them, it is not a question whether such place might with reasonable care and by reasonable expense, have been made safe. His assent has dispensed with the performance on the part of the master of the duty to make it so. Having consented to serve in the manner and way in which the business was being conducted, he has no proper ground of complaint even if reasonable precautions have been neglected." (*Lovejoy v. Railroad Corporation*, 125

Mass. 79, 28 Am. Rep. 206; *Baker v. Barber Asphalt Co.,* 92 Fed. 117; *Gowan v. Harley,* 56 Fed. 973.)

The latter case is very similar in its facts to the case at bar. (*Pierce v. Calvin,* 82 Fed. 550; *Coal Co. v. Read,* 85 Fed. 914; *Tuttle v. Railroad,* 122 U. S. 189; *Cohn v. Mc-Nulta,* 147 U. S. 238; *Sweeney v. Elevator Co.,* 101 N. Y. 520; *Williams v. Railroad,* 116 N. Y. 628; *Rice v. Paper Co.,* 174 N. Y. 385, 95 Am. St. Rep. 582; *McMillan v. Spider Lake S. & L. Co.,* 115 Wis. 332; 95 Am. St. Rep. 947.)

### RESPONDENT'S POINTS.

Is it not a far departure from the time honored respect for a jury and a jury trial, for this appellant to assert that it is prejudiced in its rights, by having had its cause submitted to a jury for determination? (*Doll v. Anderson,* 27 Cal. 249; *Pitken County Comrs. v. Brown,* 31 Pac. 525.)

This question, however, is no longer an open one in this state. In the case of *Wood v. Railroad,* 28 Utah 371, the court says: "We are of the opinion that the court below possessed discretionary authority to direct a trial by jury notwithstanding the parties to the suit may have waived the same."

The witness did not testify to an opinion. Wherein can it be said that the question, "Why did the front wheels twist, if you know?" "The testimony is competent upon the same principle that permits evidence showing the strength or force of a blow, the distance at which a sound can be heard or the direction from which it comes, the speed of a horse, the degree of cold or heat, or of light or darkness." (*Healey v. Visalia, etc.,* 36 Pac. 125, 101 Cal. 585; *Ohio, etc., v. Wrap,* 30 N. E. 427; *Meyers v. Mining Co.,* 28 Utah 96; *Nichols v. Railroad,* 25 Utah 240; *Black v. Bell Tel. Co.,* 26 Utah 451; *Jensen v. McCormick,* 26 Utah 142; *Stoll v. Mining Co.,* 19 Utah 271.)

We maintain under the testimony in this case, the plaintiff was entitled to have the question of assumed risk, negligence and contributory negligence submitted to the jury

for determination. (*Wood v. Railroad,* 28 Utah 351; *Pence v. Mining Co.,* 27 Utah 386; *Palmquist v. M. & S. S. Co.,* 25 Utah 257; *Hill v. S. P. Co.,* 23 Utah 94; *Chapman v. S. P. Co.,* 12 Utah 30; *Mayhood v. S. P. Co.,* 8 Utah 85; *Hone v. Mammoth M. Co.,* 27 Utah 168; *Boyle v. Railroad,* 25 Utah 420; *Mangum v. B. B. & C. M. Co.,* 15 Utah 534; *Reese v. Morgan, etc.,* 15 Utah 453; *Wright v. S. P. Co.,* 14 Utah 383; *Bowers v. Railroad,* 4 Utah 215.)

## STATEMENT OF FACTS.

This is an action to recover damages for personal injuries which the plaintiff alleges he received through the negligence of the defendant.    In the complaint it is alleged, in substance, that on February 19, 1904, the plaintiff, under the employ of the defendant, was engaged, with other employees, in its yard at Ogden City, in unloading certain battery houses from a car; that, to accomplish this work, the employees, by order of the defendant, constructed a temporary platform at the car with large sills or skids, about ten inches square, extending from the platform on an incline to the ground, thence on the ground a certain distance; that the houses were placed, one at a time, upon a low four-wheeled truck, run down the incline and out onto the sills on the ground, the employees guiding and holding the truck and house each time; that the battery houses when so unloaded were placed so close together upon the sills that the tongue of the truck was removed each time after the first one had been unloaded, and the truck guided by employees holding the wheels; that the implements so used were insufficient, unsafe, and dangerous because of the size and weight of the battery houses, and the angle of the incline; and that, while so unloading one of the houses, the truck ran off the sill, upset, and caused the injury of which complaint is made. In the answer all the material allegations of the complaint are denied, and contributory negligence of the plaintiff is alleged.

From the evidence it appears that, when the accident oc-

curred, the plaintiff had been in the employ of the defendant for the period of three months, as a common laborer. His duties were of a general character in the shops and about the yard—moving all kinds of material, and loading and unloading such material into and from cars. At the time of the accident, he and five other employees constituting a labor gang, including a gang foreman who worked with the others, were engaged in unloading battery houses from a flat car. The dimensions of these houses were four and one-half by five feet and eight and one-fourth feet high. To unload them the gang constructed a temporary platform at the car, by means of carpenter sawhorses, blocking, and cross-ties. From this platform two wooden skids, eight by eight or nine inches and fourteen feet long, were placed parallel, so as to form an incline from the platform to the ground, and from the end of the skids, on the ground, were laid sills on which the houses were to be placed. In unloading the houses each one was placed upon a low four-wheeled truck, and then wheeled down the incline and out upon the sills. There were six of these houses, and each time, after the first one was unloaded, in unloading a house the tongue was removed from the truck, so as to get is closer to the house previously unloaded. The plaintiff assisted in constructing the platform and incline, in arranging the appliances, and using the truck, without any objection either from himself or any other workman. The work had thus been going on from between seven and eight o'clock in the morning to between two and three o'clock in the afternoon, when the accident happened, and five of the houses had then been unloaded. Respecting this work, the plaintiff, in the course of his testimony, said: "The truck was first brought there after we got the timbers put in place. I do not remember who brought it, but a couple of the gang. I saw the truck run up these skids when the first house was unloaded. I don't know who had hold of the tongue the first time. I remember the crowd of us used the truck. I had no occasion at that time to give any particular attention to the particular thing that each individual was doing. The whole thing was being done by the gang, and we were all

co-operating in the work." The witness McClure said: "While this work was being performed, by this gang, in the way described, no one of the gang objected to the tongue being removed, or made any objection, as to the arrangement there, in connection with the removal of these houses. There was not a word said." The unloading of the house, which resulted in the injury, was being done in the same manner as that of the previous ones. It had been wheeled down to the bottom of the incline where it had been stopped, with the front wheels of the truck on the sills and the hind wheels still on the incline. Then, upon the tongue of the truck being removed by a colaborer, as on the previous occasion, in an attempt to place that house next to the previous one, the front wheels of the truck were pushed off the sills, when the house fell over and caused the injuries of which complaint is made. Respecting what caused the wheels to leave the sills, the witness McClure, on cross-examination, said: "I think the reason we had the trouble that time was that the men pushed too hard behind. That is the only reason I know of why it went off. When it got down as far as the tongue would go, then we stopped and put blocks in front of the forward wheels to hold it. Then we took the tongue out, and then it was shoved, and shoved too hard." After the removal of the tongue, two of the gang, as previously, attempted to guide the wheels of the truck on the sills, but were unable to do so, and when the house began to fall the plaintiff stumbled over a colaborer, fell, and was thus unable to avoid injury. At the trial the jury returned a verdict in favor of the plaintiff, and, upon judgment being entered accordingly, the defendant appealed.

BARTCH, C. J. (after stating the facts).

The decisive question presented is whether the plaintiff has shown any right of recovery. The appellant contends that, having aided in the construction of the temporary contrivance to unload the battery houses, the injured had actual knowledge of the means employed in the service, and, as the dangers connected therewith were open and obvious, and as he

voluntarily, without objection to the means employed, undertook to perform the service, he assumed the consequent risk of injury; that the defendant's motion for nonsuit, based upon a failure of plaintiff's proof to establish a *prima facie* case, ought to have been granted; and that the court, having denied the motion, ought, at the close of the entire testimony, have granted defendant's request to instruct the jury to return a verdict for the defendant.

Upon careful examination of the evidence disclosed by the record, we are of the opinion that the appellant's contention is well founded. The unloading of the battery houses was in the regular line of service which the plaintiff was employed to perform. His duties related generally to all kinds of the material that might be in, or shipped into, the yard. His employer was a common carrier engaged in the business of receiving and transporting all kinds of goods, implements, and material, and, in the absence of evidence showing the contrary, we must assume that the respondent was a man of average understanding and knowledge of things about him, and capable of appreciating the obvious dangers connected with the duties he undertook to discharge. At the time of the accident, he had been in that service for three months, knew what its nature was, and must have known that there was more or less risk of injury incident to the service. Such hazards, as are merely incidental to the business, the servant and the master are supposed to have taken into consideration in the negotiations respecting the employment. The fact that this was the first occasion on which battery houses had been received into the company's yard is immaterial, because the very nature of the service suggests that the employees must at times handle materials and appliances which are different from those usually received and handled. Doubtless, there are occasions, like the one in this instance, when, in order to load or unload such material, the construction of improvised means becomes necessary to perform the service. In such cases, the employees, who voluntarily assist in providing such means, for performing the service more conveniently, and continue, without objection, to perform it according to

the method adopted by them, or their employer, assume the risks of danger incident thereto, including the negligence of co-employees, when the employer, in the latter case, has exercised proper diligence in the selection and retention of co-employees. It is not claimed that the company neglected its duty in this regard. The objection relates merely to the means used in and the manner of performing the service. But, whether or not the best method was employed, the plaintiff assisted in constructing the platform and incline, observed the kind of timbers that were used for skids and sills, knew all about the construction, its temporary character and use to which it was to be put, and assisted in making use of it, including the truck, in unloading the houses, and while making use, without objection or even a suggestion of insufficiency, of the very means he helped to provide, he was accidentally injured. The whole thing was open to his observation and knowledge. Whatever dangers were connected with the manner of performing the service were, at least, as open and obvious to him as to his employer, and he had an equal opportunity to observe them; he having assisted in unloading, from the same car, a number of houses, in the same way and with the same means, just previous to the injury. And there is evidence indicating that the immediate cause of the accident was the negligence of colaborers—fellow servants, who, it seems, heedlessly pushed the house that fell over too hard after the tongue was removed from the truck. Such facts and circumstances as are here disclosed show no liability on the part of the employer, and consequently no right of recovery on the part of the employee. In a case like the one presented by this record, where the servant, of his own volition, consents to perform the service according to the method adopted, the same being open and obvious, the law is that the servant assumes the risk of the dangers incident to and connected with the performance of the service in such manner.

In *Dunn v. Railroad*, 28 Utah 478, 80 Pac. 311, a gang of section laborers constructed a temporary platform with ties and plank for the purpose of loading a car with ties.

The platform was constructed in the absence of the plaintiff, but afterwards he, in common with other laborers, without objection, used it in loading the car with ties, and, after having so used it for about two hours, he slipped on the platform, fell, and received injuries for which he brought suit. The record there presented a case much like the one at bar, and this court, in passing upon it, said:

"If, under such facts and circumstances as are disclosed by this record, an employer would be liable to an employee in damages, it would seem difficult to conceive of a case of accidental injury where the employer would not be liable. That this is one of those unfortunate accidents, in which there is no responsibility on the part of the employer, we entertain no doubt. It is clearly a case of an assumed risk incident to the employment. We are aware of the general rule that, where a master employs a servant, he must exercise ordinary care to furnish the servant a reasonably safe place in which to perform the service, and a failure to do so will render the master liable for any injury to the servant resulting from such failure; but in this case we can perceive no violation of the rule that can avail the respondent, who, we have a right to assume, in the absence of evidence to the contrary, was a man of average understanding and knowledge of things about him. We cannot say from the proof that the place was not reasonably safe, but, if it was not—if it was dangerous—the danger was open and obvious, and the employee could easily observe it. Whatever hazard was connected with the loading of the ties was equally open and obvious to the employee as to the employer, if not more so; and, if there was anything unsafe about the platform, the exercise of ordinary care would have revealed it to the employee. He having voluntarily engaged in such service, concurring in the use of the contrivance, observing its construction and temporary character, and, as a man of ordinary understanding and knowledge, aware of the dangers incident to the employment, and having, of his own volition, undertaken to perform the service in that way, must be held to have assumed the ordinary risks of injury incident to that service, including the risk of the injury in question, and cannot now be heard to complain."

And, in that case, upon the question of reasonably safe place to perform the service, Mr. Justice McCarty, observed:

"While it is a duty the master owes to his servant to furnish him with a reasonably safe place in which to perform his work, the master is not bound to anticipate and guard against every conceivable kind of accident or misfortune that might occur. The appellant in this

case was only required to use that degree of care and diligence in the construction of the runway and platform that a reasonably cautious and prudent man, understanding the dangers and hazards of the employment, would use under the same or like circumstances. The master cannot be expected, nor is he required, to anticipate and guard against every conceivable kind of accident and misfortune that might happen to the servant in the performance of the work; yet, if the respondent can be permitted to recover in this case, it would be difficult to conceive of a set of circumstances under which a master would not be liable to his servant for injuries sustained because of an accident to the servant while in the performance of the work required of him. The platform and runway were simple devices, temporary in character, and plainly observable, and to me it is incomprehensible how it was possible for respondent to go up this runway and onto the platform every few minutes for a space of two hours, and not become aware of the nature and character of their construction." (Cooley on Torts, 634-636; *Roth v. Eccles*, 28 Utah 456, 79 Pac. 918; *Christienson v. R. G. W. Ry. Co.*, 27 Utah 132, 74 Pac. 876, 101 Am. St. Rep. 945; *Higginns v. Southern Pac. Co.*, 26 Utah 164, 72 Pac. 690; *Sullivan v. India M. Co.*, 113 Mass. 396.)

Entertaining the conviction that the plaintiff has shown no right of recovery, we do not deem it important to discuss or pass upon any other question presented.

The judgment must be reversed, with costs, and the case remanded for further proceedings in accordance with law. It is so ordered.

McCARTY, J., concurs.

STRAUP, J.

I am of the opinion that the respondent assumed the risk, and therefore concur in the judgment of reversal.