## BUSSE v. MURRAY MEAT & LIVE STOCK CO.

### No. 2683.   Decided April 2, 1915 (147 Pac. 626).

1. MASTER AND SERVANT—INJURIES TO SERVANT—SUFFICIENCY OF
   EVIDENCE—NEGLIGENCE. In an action for injuries to an employé
   in a meat packing plant, evidence *held* not to show that the
   accident was proximately caused by negligence of the master,
   if any, in failing to furnish a safe place or appliances for work.
   (Page 601.)

2. NEGLIGENCE—PROOF—INFERENCES. Negligence may be inferred
   from known or established facts and circumstances, but it can-
   not be conjectured or inferred from other inferences.[1] (Page
   601.)

3. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMPTION OF
   RISK—DEFECTIVE PLACE TO WORK. A servant assumed the risk
   incident to the failure of the master to place a railing around
   the platform on which the employé was required to work, since
   the danger was open.[2] (Page 602.)

4. MASTER AND SERVANT—INJURIES TO SERVANT—"TOOL" OR "IMPLE-
   MENT." A 4x4 timber, with a stick nailed across one end, used
   by employés to force the contents of a tank through an open-
   ing in the bottom thereof, is not a "tool" or "implement" for
   the safety of which the master is responsible, since it is so
   simple that any danger connected with its use must have been
   known to a man of ordinary intelligence. (Page 602.)

Appeal from District Court, Third District; *Hon. F. C.
Loofbourow*, Judge.

Action by Arthur Busse against the Murray Meat & Live
Stock Company.

Judgment for defendant on nonsuit.   Plaintiff appeals.

AFFIRMED.

*Stewart, Bowman, Morris & Callister*, for appellant.

*Hurd & Hurd* for repsondent.

[1] *Quinn* v. *Utah Gas & Coke Co.*, 42 Utah 113; 129 Pac. 362; 43
L. R. A. (N. S.) 328.

[2] *Pulos* v. *Denver & R. G. R. Co.*, 37 Utah 238; 107 Pac. 241; Ann.
Cas. 1912C, 218.

APPELLANT'S POINTS.

A nonsuit should be granted only when the evidence wholly fails to support the demand of the plaintiff. (*Adams* v. *Bunker Hills & Sullivan Mining Co.*, 12 Ida. 637; 89 Pac. 624.) If the evidence has a legal tendency to make out a proper case in all its parts, although it may, in the opinion of the trial judge, be slight, inconclusive, and far from satisfactory, yet it should be submitted to the jury. (*Cunningham* v. *U. P. Ry. Co.*, 4 Utah 206 and cases therein cited.) No case should be taken from the jury unless it appears, as a matter of law, that no recovery can be had upon any view which can reasonably be drawn from the facts which the evidence tends to establish. (*Cain* v. *Gold Mountain Mining Co.*, 71 Pac. (Mont.) 1004.) To hold otherwise would be to deprive a litigant of the right of trial by jury. (*Nyback* v. *Lumber Co.*, 90 Fed., 776.) From aught that appears in the evidence appellant was performing his work with ordinary care at the time of the accident. There is nothing to show that he was injured through any fault on his part. Appellant is entitled to that presumption of self-preservation that any person under ordinary conditions will take care of himself and save himself from harm and injury. (*Adams* v. *Bunker Hill Mining Co.*, 12 Ida. 637; 89 Pac. 624; 11 L. R. A. (N. S.) 844; *Denver Tramway Co.*, 35 Pac. (Colo.) 269.) The choice of the implement with which to empty the fat tank lay with the respondent company, which implement the appellant had a right to rely upon as being suitable for the work and reasonably safe. (*Mangum* v. *Bullion, Beck & Champion Mining Co.*, 15 Utah 534; *Tuckett* v. *Steam & Hand Laundry*, 30 Utah 273; *Momence S. Co.*, v. *Turrell*, 106 Ill. App., 160.) It is a question for the jury, therefore, to determine, in view of the evidence in the case at bar, whether or not appellant assumed the risk incident to the emptying of the said tank. (*Mangum* v. *Bullion B. & C. Mining Co.*, 15 Utah 534; *Tuckett* v. *Steam & Hand Laundry*, 30 Utah 273.)

RESPONDENT'S POINTS.

The mere fact of the accident carries with it no presumption of negligence on the part of the employer, but the plain-

tiff, in order to recover, must show affirmatively that he was negligent, and where the testimony leaves the matter uncertain and shows that any one of several things might have caused the accident; for some of which the employer is responsible, and for some of which he is not, the plaintiff must fail.    The matter cannot be left to mere conjecture, or the jury be permitted to guess from which of the causes the accident happened.    (*Quinn* v. *Utah Gas & Coke Co.*, 42 Utah 113; 129 Pac. 362; *James* v. *Robinson*, 39 Utah 414, at p. 429; *Patton* v. *Texas & Pac. Ry. Co.*, 179 U. S. 658; *Looney* v. *Metropolitan Ry.*, 200 U. S. 480.)

The servant is held to assume all the risks and hazards ordinarily incident to the particular business in which he is engaged and any other risks or dangers which exist at the time of employment or develop after, where the servant has full knowledge of such dangers and risks; or when the servant could by casual inspection have discovered the danger, he is held to have assumed it.    (*Faulkner* v. *Mammoth Mining Co.*, 23 Utah 437; *Stone* v. *Union Pac. R. R. Co.*, 35 Utah 305; *Dunn* v. *O. S. L. R. R. Co.*, 28 Utah 478; *Pulos* v. *D. & R. G. R. R. Co.*, 37 Utah 238.)    Where there is a comparatively safe and a more dangerous way known to a servant, by means of which he may discharge his duty, he is guilty of contributory negligence in selecting the more dangerous method.    (*Fritz* v. *Electric Light Co.*, 18 Utah 493; *Morris* v. *Duluth S. S. & A. R. Co.*, 47 C. C. A. 661; 108 Fed. 747; *Walker* v. *Atlanta & W. P. R. Co.*, 103 Ga. 820; 30 S. E. 503; *English* v. *Chicago, M. & St. P. R. Co.*, 24 Fed. 908; *Gowen* v. *Harley*, 6 C. C. A. 190; 56 Fed. 973.)

FRICK, J.

The plaintiff, as an employé of the defendant, brought this action to recover damages for personal injuries which he alleged he sustained through the negligence of the defendant. The alleged negligence consisted in the alleged failure to supply the plaintiff with a proper and safe tool or implement with which to do the work assigned him and in negligently failing to provide a guard rail around a certain platform on which he was required to work.    The defendant admitted the

employment, but denied the alleged negligence, and also set up the defenses of contributory negligence and assumed risk.

The facts developed at the trial, all of which are conceded, are substantially as follows: The defendant was engaged in the live stock, meat, and sausage business and owned and operated its plant near Murray City, in Salt Lake County, and the plaintiff was in its employ as a butcher and general helper. In a building used by the defendant, a tank was placed upon a platform about eight feet wide and approximately twelve feet long. This platform was erected in the southeast corner of said building so that one side and one end thereof were open; the other side and end being against the walls of the building. The platform was about the height of an ordinary man from the floor of the building, and a ladder was used to go to and from the same. There was a round steel tank on the platform, which was about eight feet long and four feet in diameter, with an oval opening in both top and bottom. The tank was so placed that at the north side it was within eight or ten inches from the edge of the platform, while on the west end it was about three feet from the edge. There was room on the platform for the men to stand between the tank and the walls of the building. The platform was used to throw on bones, fat, tallow, and refuse matter which was thereafter placed in the tank and heated and boiled to separate the grease, tallow, etc., from the bones. After the grease and tallow were separated and were drained off from the bones, they would settle to the bottom of the tank, and would at times fill up and clog the opening at the bottom, and some of the men would then be required to force the bones and refuse matter through the lower tank opening. A piece of timber four by four inches square and probably eight or ten feet in length, the exact length not being shown, was used to stir up the matter in the tank and to force the bones through the lower opening. That method had been pursued for some time before the accident. Indeed, the evidence does not disclose that any other method had ever been used. In order to better enable the men to handle and turn the four by four in using it in the tank, some one in authority had nailed a strip about three inches wide, one inch

thick, and about sixteen inches long across and near the top or end of the four by four. Some time between the 20th and 30th of October, 1909 (the exact date is not shown), the plaintiff, in doing his work, was standing on the platform and was forcing the bones and refuse matter of the tank through the lower opening as aforesaid with the four by four. The platform was slippery from the grease and tallow thrown and left thereon, and, as before stated, was open at the north side and west end. How the plaintiff performed the work and what then happened to him is stated in his abstract in the following words:

"Q. Now, in operating this four by four with the handle attachment, as you have described, which way did you hold the handle? A. Well, the most of the time I had the handle (indicating); it was handled on this side, towards my breast. Q. You held the handle towards your breast? A. Yes. Q. Did you hold it that way on this particular day of the accident? A. Yes, sir. Q. How did Mr. Naeglin hold it? A. I could not tell you that. Q. Was that the easiest way to operate it? A. Yes, sir. Q. What is the last thing you remember on the day of the accident? A. I stood on this platform and tried to empty this tank with this four by four. Q. Did you have hold of the handle? A. Yes, sir. Q. And what do you next remember? A. I remember then that I was laid in a room. Q. Where? A. Downstairs, in the barn; a little room. I was in that room. Q. Was anybody in this casing room where the tank was when you were working immediately prior to the accident? A. No, sir; I was alone there."

On cross examination the plaintiff said:

"Q. And all you remember is that you were working in that way; and that is the last you remember, that you had this pole there, and it was all right at that time? A. Yes, sir. Q. It looked perfectly safe and secure then? A. Yes, sir. Q. And you were working in there with the pole in the tank? A. Yes, sir; in and around the best way I could do."

It is not clear from the evidence whether the four by four was found in the tank at the time the plaintiff was found

lying on the floor or whether it was also lying on the floor. It is clear, however, that the strip called the handle which was nailed across the four by four, and which extended on either side thereof about six inches, was broken off. It is, however, again doubtful whether both ends or only one end was broken off. It also was made to appear that the plaintiff was found lying unconscious on the cement floor of the building in which the tank was located some distance from the tank; that he was thirty-four years of age, was an experienced butcher, and that he was seriously injured, his skull having been fractured. No one saw the accident, and the plaintiff was not found until some time after it occurred.

The foregoing substantially covers all the evidence relating to the accident which was produced at the trial. Upon the foregoing facts the defendant moved for a nonsuit upon the grounds: (1) Failure to prove negligence on the part of the defendant; (2) contributory negligence of the plaintiff; and (3) assumed risk. The court sustained the motion and entered judgment dismissing the action, from which the plaintiff appeals.

It is alleged that the court erred in sustaining the motion for nonsuit and in entering judgment dismissing the action.

It seems to us that the ruling of the court was proper. After a careful perusal of the evidence, we can find nothing on which a jury could properly base a finding of negligence on the part of the defendant. Even if it were assumed that the four by four was not a proper tool or implement with which to force the bones and refuse matter through the bottom opening of the tank, yet it is mere conjecture that the four by four was the proximate cause of the accident. Ordinarily, at least, it is not enough for an employé to show that the tool or implement provided for and used by him was defective or insufficient, but, in case of an accident, he must also show that the defect or insufficiency of the tool was the proximate cause of the injury of which he complains.

Moreover, there is no evidence from which the jury could determine how the accident happened or what caused it. How can any one say what, if any, act of the defendant, whether of commission or omission, caused or directly

contributed to the accident in question? True, negligence as well as how the accident occurred may be inferred from known or established facts and circumstances. Such inference must, however, be based upon some known or established fact or facts and cannot be conjectured or inferred from other inferences. In failing to show negligence, we think this case comes squarely within the principle which controlled the case of *Quinn* v. *Utah Gas & Coke Co.*, 42 Utah 113; 129 Pac. 362; 43 L. R. A. (N. S.) 328. See, also, 3 Elliott on Evidence, section 2503. Assuming, without conceding, that the defendant was negligent in failing to place a guard rail around the edge of the platform, as alleged, yet there is again nothing to show that the absence of such a rail was the proximate cause of the accident and injury.

It would seem, however, that, under the circumstances, the plaintiff must be deemed to have assumed the risk of falling from the platform by working thereon in the condition in which it was. In that respect we think this case falls squarely within the rule laid down by us in *Pulos* v. *Denver & R. G. R. Co.*, 37 Utah, 238; 107 Pac. 241; Ann. Cas. 1912C, 218. If there was any danger in going on the platform, it was as open to the plaintiff as to any one, and the danger, if any, certainly would be appreciated by any ordinary mature mind.

Again, the four by four was a thing which could hardly be designated as either a tool or an implement. It was such an ordinary and simple instrument, if it can be so called, that any person of the most ordinary intelligence would have known and appreciated whatever danger, if any, there might have been in using it for the purpose it was used. Upon this record we are forced to the conclusion that the ruling of the court and the judgment entered by it are in accordance with law.

The judgment is therefore affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.