## VIREND et al. v. UTAH ORE-SAMPLING CO.

No. 2918.   Decided September 19, 1916.   (160 Pac. 115.)

1. MASTER AND SERVANT—ASSUMPTION OF RISK—QUESTION FOR JURY. Where there is a dispute in the .evidence respecting the material circumstances, or some of them, or where it is such that reasonable men might fairly differ with regard to whether the danger under all the circumstances was so open and apparent to any one of ordinary prudence and intelligence that he ought to have known and appreciated it, the .question of his assumption of risk was for the jury; but where there is no dispute regarding the facts, or any of them, and the risk of injury is of such a character that a person of ordinary prudence and intelligence ought to have known and appreciated it, there is nothing for the jury to pass upon.[1]  (Page 403.)

2. MASTER AND SERVANT—ASSUMPTION OF RISK—PRESUMPTION. Where it requires only ordinary knowledge, skill, and prudence to know and appreciate the danger to an employee in an ore-sampling plant, the law assumes that he must have known and appreciated whatever danger there was.  (Page 403.)

3. MASTER AND SERVANT—ACTION FOR INJURY—SUFFICIENCY OF EVIDENCE. Where the real cause of a fatal accident to an employee in an ore-sampling plant while operating an ore crusher was a mere matter of conjecture, so that different persons reading the evidence might suggest different causes, a non-suit and a judgment dismissing the action were proper.[2]  (Page 404.)

Appeal from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by Annie Virend, Sr., and Annie Virend and others, minors, by their guardian ad litem Annie Virend, Sr., against the Utah Ore-Sampling Company.

Judgment for defendant.

From a directed verdict, the plaintiffs appeal.

[1] *Busse* v. *Murray Meat, etc., Co.,* 45 Utah 596, 147 Pac. 626; *Cook* v. *Smelting Co.,* 34 Utah 190, 97 Pac. 28; *Richards* v. *Ogden Steam Laundry,* 32 Utah 423, 91 Pac. 267.

[2] *Fritz* v. *Electric L. Co.,* 18 Utah 493, 56 Pac. 90.

AFFIRMED.

*Morgan, Huffaker & Bradford* and *E. A. Walton* for appellants.

*King & Nibley* and *P. T. Farnsworth, Jr.*, for respondent.

FRICK, J.

The plaintiffs Annie Virend, as the wife of one Frank Virend, deceased, in her own right, and as the guardian ad litem of Annie, Frank, Christina, and Rose Virend, minor children of said first-named Annie Virend and Frank Virend, brought this action to recover damages, which it is alleged all of the plaintiffs suffered by reason of the death of the deceased husband and father. In the complaint, after alleging the relationship of the plaintiffs to the deceased, and that at the time of his death he was in the employ of the defendant in its ore-sampling mill and that he was employed about an ore crusher with an unguarded flywheel, etc., it is then alleged that the deceased came to his death by reason of the negligence of the defendant. The negligence that is relied on by the plaintiffs is stated thus in their printed abstract:

"That it (the defendant) negligently failed to provide the deceased with a reasonably safe place in which to work, that it negligently and carelessly failed to warn and instruct the deceased in respect of the danger of said work, and that it negligently failed and omitted to have and maintain a guard rail or other protection at and about said flywheel."

The defendant, in its answer, after admitting the relationship of the parties and that of master and servant, denied all acts of negligence, and as affirmative defenses pleaded contributory negligence and assumption of risk.

We remark here that there is no evidence in the record supporting the second ground of negligence above stated. Plaintiffs' evidence upon the other branches of the case tended to prove the following facts: The deceased, on the 23d of June, 1915, the day of the accident, was engaged in operating an ore crusher in defendant's sampling mill. The crusher was on an upper floor in the building and at the time was crushing

what the witness call "copper matte," which is a substance
that is hard to crush. The crusher consisted of two horizontal
corrugated rolls which revolved toward each other, and in
that way crushed the material which was run into a hopper
located over the two rollers. A witness for the plaintiff, stat-
ing his evidence in the language of the printed abstract fur-
nished by the plaintiffs, described the operation of the crusher
as follows:

"In keeping the rolls clear, the men used an old steel drill
about three feet long and three-fourths inches in diameter,
with a head put on it so that the men could drive it into the
rolls without the rolls catching the bar. When I saw the de-
ceased lying there I saw the bar lying on the platform back
of him, towards the wall, which would be to the left as indi-
cated by the drawing. I have cleared rolls and kept them
clear during such operations. These rolls had small corruga-
tions, about one-eighth inches. They were both the same size;
about eight inches in diameter and twenty inches long, and
operate very close together, one roll being set on heavy springs,
so that it will give a little, about half an inch, and thus ac-
commodate itself in some degree to the size of the rock to be
crushed. It is necessary to have a man watch the rolls, be-
cause the matte is hard and slick, and if the chunks are a little
large they ride the rolls to the end of the cheek plate and the
rolls don't bite them. The duty of the operator is to hit the
pieces that won't go through and drive them through; hit
them hard enough so that the rolls will bite them. In so doing
it is possible for the rolls to bite the bar. In my experience in
that mill I have had the bar taken away from me and drawn
through the rolls. When the bar is in use its direction is on a
slant from the perpendicular, and if jerked hard by the rolls
it will go through, and even if not jerked so hard as to be
pulled through, it is bound to jerk a man and pull him around.
When I saw Mr. Virend lying there dead, the bar was lying
behind him, probably two feet away from the crusher, and
about a foot from the body, which was lying between the bar
and the machine. The bar, when not in use, was usually kept
standing up in the corner and not in that particular place
where it was found. The platform is about three feet wide

from the front of the roll to the east wall of the mill, and about four or five feet from stair to stair.''

The witness, again quoting from the abstract, on cross-examination, said:

''Prior to his death, Virend had been working about three years in the plant, and for a year it had been a part of his business to watch or work about the crusher at which this accident occurred. Prior to that time he at times worked about the crusher. He worked about that crusher more than any one else. The accident occurred at about eight o'clock in the forenoon. It was light, and there are outside windows about $4\frac{1}{2}$ feet from the crusher. The crusher had been there with the flywheel and the railing and other things immediately about it in that same condition during all the three years the deceased had worked in the mill. There was no difficulty in seeing the conditions there. We were running matte that day. We receive shipments of matte regularly. We have run matte through that crusher hundreds of times while the deceased, Frank Virend, was there performing his work. I was the first man there after the accident. I found his head between the flywheel and the crusher (indicated on drawing by counsel). That was the only part of his body in contact with the flywheel, and his body and legs extended in a northerly direction. At the time he was wearing overalls and a jumper. They were not torn or disarranged.''

The witness who was the foreman in charge of the mill also testified that the deceased went to work at seven o'clock on the morning of the accident, and that the witness directed him to go to work at the crusher. His testimony then proceeds as follows:

''It would take both the rolls to bite the bar, and in that event the tendency would be to jerk the bar to the right or left or into a perpendicular, and to pull it away from the man. The rolls are full length of the platform across the point marked 'X.' I noticed that the top and back of his head was open, torn off; part of the skull was torn off. He was right against the wheel, and the spokes of wheel were pounding away at his head. That platform and the situation were the same then as now. There is a stair rail which comes down

flush with the side rim of the pulley. The wheel was open, and his head was between the inside rim and the frame of the roll, at which place there is an opening.''

Another witness testified for plaintiff, and, according to the abstract, said:

''I live in Murray. I am working at the Utah Ore-Sampling plant at Murray. I worked there about a year and a half before Mr. Virend was killed. I have worked lots of times on the crushers, but not steady; about three or four months at a time. I have worked at the crusher where Mr. Virend was killed while matte was being run, and I have used a bar, but I have never had it get caught. I never saw anybody get hurt while using the bar, but I have seen the rolls take the bar away from the man; you see the rolls pull the bar so quick, the man has no time to loosen it; it jerks it and jerks him. This man that I said I saw the bar taken away from was a Mexican named Lou. When we took the bar out we had to stop the mill. I helped take it out.''

On cross-examination he further said:

''When I first started to work down there it was six or seven years ago, and I have worked off and on ever since, about three years in all. I worked all over the plant. I never knew of anybody getting hurt; but I did see the bar taken away from this Mexican. That is the only time I ever saw that happen. On that occasion we had to loosen the rolls to get the bar out. It was held fast in the rolls.''

It was further shown that the crusher was operated by means of a belt and drive wheel, and that an open or unguarded balance or flywheel about five feet in diameter was constantly revolving at a rapid rate near the crusher when it was in operation. The flywheel is described in the foregoing statements of the witnesses and is the wheel near which the deceased was found lying dead when found by the foreman as by him stated. It was further shown that the crusher—that is, the hopper into which the material to be crushed was received—was about the height of an ordinary man's waist; that the crusher sat on a small open platform several feet from the main floor of the building, which platform was connected with the main floor by means of several steps, and that

the operator always had full view of the different parts of the crusher, including the wheels aforesaid. The foregoing, in substance, is all the evidence relating to the negligence of the defendant and as to how the accident probably occurred.

After plaintiff rested the defendant interposed a motion for a nonsuit upon substantially the following grounds: (1) That plaintiffs failed to establish any negligence on the part of the defendant; (2) that there is no evidence tending to prove that any of the alleged acts of negligence were the proximate cause of the accident; and (3) that the deceased assumed the risk. The court sustained the motion, and the ruling is assigned as error.

On behalf of the plaintiffs it is insisted that although it be conceded that the machinery was open, and that the deceased was familiar with the operation of the crusher, yet the question whether he appreciated the danger was a question for the jury.

No doubt, ordinarily, when there is some dispute in the evidence respecting the material circumstances, or some of them, or where it is such that reasonable men might fairly differ with regard to whether the danger, under all the circumstances, was so open and apparent to any one of ordinary prudence and intelligence that he ought to have known and appreciated it, then the question is for the jury. Where, however, as here, there is no dispute regarding the facts, or any of them, and the danger or risk of injury is of such a character that a person of ordinary prudence and intelligence ought to have known and appreciated it, then there is nothing for the jury to pass upon. We think the case, so far as the doctrine of assumption of risk is concerned, is controlled by the cases of *Busse* v. *Murray Meat, etc., Co.*, 45 Utah, 596, 147 Pac. 626; *Cook* v. *Smelting Co.*, 34 Utah 190, 97 Pac. 28, and *Richards* v. *Ogden Steam Laundry*, 32 Utah 423, 91 Pac. 267.

In the case at bar, as in the cases referred to, it required only ordinary knowledge, skill, prudence, and foresight to know and appreciate the danger with which the servant might be confronted, and hence the law as-

sumes that he must have known and appreciated whatever danger there was.

As to the utter lack of evidence, or facts from which inferences might legitimately be deduced, respecting the real cause of the accident, the case of *Fritz* v. *Electric L. Co.*, 18 Utah 493, 56 Pac. 90, is controlling. There, as here, the real cause of the accident was a mere matter of conjecture. **3** In this case one person reading the evidence might suggest one cause, another reading the same evidence a different cause, while a third who read all of the evidence might perhaps think that to some extent a part of each of the other two suggested causes was operative. That, as pointed out in *Fritz* v. *Electric L. Co.*, *supra,* does not constitute the degree of proof necessary to support a verdict.

After a careful reading of this record the conclusion is unavoidable that the District Court committed no error in sustaining the motion for nonsuit and in entering judgment dismissing the action.

The judgment is therefore affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.