# RUSSELL v. BORDEN'S CONDENSED MILK CO. OF UTAH.

## No. 3210.   Decided June 13, 1918.   (174 Pac. 633.)

1. APPEAL AND ERROR—REVIEW—WEIGHT OF EVIDENCE.  Supreme Court cannot pass upon the weight of the evidence.  (Page 462.)

2. MASTER AND SERVANT—METHODS OF WORK—MASTER'S DUTY. Though master is not required to use any particular method, and does not insure the safety of his employees in adopting any particular method, it is his duty to use only such methods as are reasonably safe.  (Page 462.)

3. MASTER AND SERVANT—APPLIANCES—DUTY OF MASTER.  The tools and appliances adopted by the master must be reasonably safe to do the work required of them.  (Page 462.)

4. MASTER AND SERVANT—INJURY TO EMPLOYEE—METHODS OF WORK —KNOWLEDGE OF METHOD BY EMPLOYEE.  The fact that employee who was injured while assisting in moving a three or four ton machine had full knowledge of the method employed in moving the machine is not, standing alone, sufficient to absolve employer from responsibility for injury.  (Page 462.)

5. MASTER AND SERVANT—INJURY TO EMPLOYEE—SAFETY OF METHODS EMPLOYED—JURY QUESTION.  In employee's action for injuries sustained in assisting in the moving of a heavy machine, whether the method used by employer in moving the machine was reasonably safe under all the circumstances was question of fact for jury.  (Page 462.)

6. MASTER AND SERVANT—INJURY TO EMPLOYEE—METHOD OF WORK— ASSUMPTION OF RISK.  An employee assisting in moving a three or

four ton machine did not, as a matter of law, appreciate the danger of his work and assume the risk thereof merely because the method adopted by employer in moving machine was open and obvious to him. (Page 462.)

7. MASTER AND SERVANT—INJURY TO SERVANT—USE OF SIMPLE APPLIANCES. In employee's action for injuries, the use of simple tools or appliances under certain circumstances furnishes a broader scope for the application of the various affirmative defenses ordinarily available to the master. (Page 464.)

8. MASTER AND SERVANT—EMPLOYER'S DUTY—DELEGATION—APPLIANCES. Employer's duty of furnishing reasonably safe appliances cannot be delegated to an agent or servant so as to enable employer to escape responsibility for an injury to an employee. (Page 466.)

9. MASTER AND SERVANT—INJURY TO EMPLOYEE—INSTRUCTIONS. In employee's action for injuries sustained in assisting in moving a heavy machine, a requested instruction that employer would not be liable if it had furnished safe implements was properly refused; the employer having additional duty of adopting reasonably safe method of using such appliances. (Page 467.)

10. EVIDENCE—X-RAY PHOTOGRAPHS—ILLUSTRATING PHYSICIAN'S TESTIMONY. In personal injury action radiographs or X-ray photographs were properly admitted in evidence for purpose of being used by doctors in illustrating their testimony; such evidence affording jury a fuller and clearer understanding of doctor's testimony. (Page 467.)

Appeal from the District Court of Cache County, First District; *Hon. J. D. Call,* Judge.

Action by C. B. Russell against the Borden's Condensed Milk Company of Utah.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Nebeker, Thatcher & Bowen* for appellant.

*A. A. Law* and *George Q. Rich* for respondent.

FRICK, C. J.

The plaintiff, as an employee of the defendant, obtained judgment against it for personal injuries, which, he alleges, were caused by defendant's negligence.

The gist of the negligence alleged in the complaint is that the defendant was negligent in failing to provide proper and suitable tools and implements to move a certain machine, and that the same was moved in an improper, dangerous, and hazardous manner. The defenses interposed, which are now material are: (1) A denial of the alleged negligence; (2) contributory negligence on the part of the plaintiff; and (3) assumption of risk.

The controlling facts, as they appear from the evidence produced by the plaintiff at the trial, in substance, are as follows: On the 12th day of October, 1916, the plaintiff was in the employ of the defendant corporation which owned and operated a plant at Logan, Utah, at which it manufactured condensed milk and other dairy products. The plaintiff was a common laborer, and from the time of his employment by the defendant, in June, 1916, to the time of the injury was engaged in receiving milk, cleaning out what are called "hot wells," and doing that character of work about the plant. The defendant, during the summer of 1916, had enlarged its manufacturing plant by constructing an additional building adjoining the one in which the machinery was operated and the injury complained of was inflicted on plaintiff while engaged in moving a certain machine a distance of from fifteen to eighteen feet from the old to the new building. The machine in question is called a homogenizer. It is a compact machine, entirely composed of metal, and, according to plaintiff's evidence, was about seven feet in length, about four feet in width, and about three feet high, and weighed between three and four tons. (According to the evidence of the assistant superintendent of the defendant the machine was somewhat shorter and weighed 7,500 pounds.) The machine, while in use in the old building was about fourteen to eighteen inches lower than the surface of the floor of the building, and, preparatory to moving the same, it had been raised to the level of the floor or a little higher by jackscrews, and, according to plaintiff's testimony had been placed on planks

three inches thick, 12 inches wide, and about sixteen or eighteen feet in length. According to the assistant superintendent's testimony the planks were four inches thick. The machine had also been placed on three iron rollers from two and one-half to three inches in diameter. The machine was in the condition just stated, and ready to be moved when the plaintiff was called by the foreman of the defendant to assist six or seven other employees to move the machine from the old into the new building, a distance variously estimated of from fifteen to twenty feet. The exact distance is immaterial, however. The machine was moved in the evening after the regular day's work had been completed. After the machine had been raised as aforesaid, and had been placed on the planks and the iron rollers, it was propelled forward by means of crowbars. It seems not much force was required to move the machine forward on the planks and the rollers. When the machine had been moved into the new building, which, as before stated, was merely an addition to the old one, it became necessary to shift it into position so as to place it in proper alignment with other parts of the machinery in that building. This part of the work it seems, was more or less difficult, in that it required the men to lift and shift the machine into the desired position by using levers. The machine was, however, still resting on the planks and the rollers, and thus its base, according to the evidence, was from five and one-half to six and one-half inches from the floor which was made of solid concrete or cement. The work of moving and placing the machine had been done under the direction of the assistant superintendent of the defendant, and the men, in raising and shifting the machine, acted under his orders. For the purpose of lifting and shifting the machine into alignment, as before stated, the assistant superintendent directed the men to procure certain planks, two inches thick by six inches wide and about ten or twelve feet in length, which were lying outside of the building. The men including the plaintiff, procured the planks, two of which were two inches thick by six inches wide, while the third was four inches thick by six inches wide, for the reason that two two by six inch planks had been nailed together. Two men were

placed in charge of each plank. The assistant superintendent directed the men to place one end of the aforesaid planks under the base of the machine edgewise, that is, the narrow end upwards, and by placing a piece of wood under the plank to act as a fulcrum, and in that way to raise and lift the machine up by pressing down on the levers or planks. By that method the men, by concerted action, would raise or pry up the machine somewhat by pressing down on the levers, and, in accordance with the directions of the assistant superintendent, would swing the ends of the planks used as levers, in the direction indicated by him, and in that way would shift the machine in the desired direction. While in the act of lifting and shifting the machine one of the two by six planks used as a lever was permitted to turn over on its flat side, and in doing that the entire weight of one side of the machine was suddenly shifted onto the plank or lever on which plaintiff was working. The additional weight thus cast upon that lever forced it out of the hands and control of the plaintiff and his fellow workman, and caused plaintiff to fall backward upon the cement floor, and the two by four plank fell on him. The plaintiff, by the fall, and by the two by four plank falling on him, as he alleges, sustained severe injuries to the bones of his hip and hip joint, which caused atrophy to one of his legs and serious injury to the sciatic nerves, which injuries, the doctors testified, were painful and permanent.

After proving the foregoing facts, and further proving the extent of the injuries, his earning capacity, his age, and his condition of health before the injury, and after introducing the evidence of an expert to the effect that the use of the planks and the method pursued by the assistant superintendent in shifting the machine were improper and unsafe, the plaintiff rested. The defendant moved for a nonsuit upon the grounds: (1) That the plaintiff had shown no negligence on the part of the defendant; (2) that plaintiff's evidence proved him guilty of contributory negligence; and (3) that plaintiff had assumed the risk. The court denied the motion for a nonsuit. The defendant then produced evidence contradicting in part plaintiff's theory and manner of the occurrence of the accident. After defendant had produced this

evidence, it requested the court to instruct the jury to return a verdict for the defendant.  The court denied the request.

In view that we cannot pass upon the weight of the evidence, no purpose could be subserved in setting forth even the substance of defendant's evidence, and hence we shall refrain from doing that.  Moreover, defendant's counsel, apart from certain objections to instructions and to certain evidence, in their brief, have argued only the one question of assumed risk.

Counsel now contend that under the undisputed evidence plaintiff assumed the risk as a matter of law.  The contention is primarily based upon the following propositions: (1) That the tools or implements provided by the defendant and used for the purpose hereinbefore stated were simple, and their character and use were within the comprehension of any ordinary man; and (2) that the master had a right to select his own method of moving the machine, and that the character of the tools or implements used and the method pursued were as open and obvious to the plaintiff as to the defendant, and that he knew as much concerning the probable effect of using the implements and of pursuing the method as the defendant or any one else.

While it is true that in carrying on his business the master is not bound to pursue any particular method, and that he does not insure the safety of his employees in adopting any particular method, yet the law imposes a duty upon the master that "the methods, as well as the appliances, adopted by the master must be reasonably safe." 3 Labatt's Mast. & Serv. section 936.  The case at bar, however, does not present the precise question of carrying on the master's business in a particular way or by using a particular method.  In this case the plaintiff was not injured while he was engaged in the performance of his usual or everyday work.  Here the servant was called on to do something which was quite outside the scope of his usual employment, and the special work was performed under the personal direction and supervision of the assistant superintendent who represented the master.  The rule, therefore, which counsel invoke cannot be said to be applicable to the full extent claimed by them.

While it is true, as counsel suggest, that plaintiff saw and thus had full knowledge of the method that was pursued in moving the machine, yet that, standing alone, under the circumstances, would not necessarily absolve the master from all responsibility as a matter of law. The question of whether the method adopted by the defendant was reasonably safe under all the circumstances, in our judgment, was a question of fact for the jury. If that be so, then it must necessarily follow that it cannot be determined as a matter of law that because the method adopted by the defendant to move the machine was open and obvious to the plaintiff, for that reason he, as a matter of law, also appreciated the danger that might arise from pursuing that method, and hence assumed the risk.

What we have said respecting the master's duty in adopting methods applies with equal force to the furnishing of tools and appliances. It does not necessarily follow that because tools or appliances are simple the servant for that reason, and under all circumstances, assumes the risk as a matter of law. The law imposes a duty on the master to furnish and provide his servants with "such appliances as are reasonably safe and suitable" to do the work required of them. 3 Labatt's Mast. & Serv. section 917. In the volume last cited, at section 898, the duty of the master is stated thus:

"(1) To see that suitable instrumentalities are provided; (2) to see that those instrumentalities are safely used."

"It is not the duty," says Labatt, "of the master to furnish any particular kind of tools, implements, or appliances. The test is not whether the master omitted to do something he could have done, but whether in selecting tools and machinery for their [the servants'] use, he was reasonably prudent and careful; not whether better machinery might not have been obtained, but whether that provided was in fact adequate and proper for the use to which it was to be applied." 3 Labatt's Mast. & Serv. section 931.

In the same volume, section 924a, the author says:

"It is submitted that, as has been indicated above, it is illogical and unreasonable to say that the master is free from the obligation of

using ordinary care merely because the appliance he furnished is a simple tool, but the better view is that, the appliance being a simple tool, and entirely understood by the servant, the latter's obligations to his master and to himself are increased; and cases involving injuries from simple tools furnish a broader scope for the application of the various affirmative defenses which are ordinarily available to the master.''

It will thus be observed that the use of simple tools or appliances under certain circumstances simply enlarge the scope of the master's defense, but it does not necessarily imply that the servant assumes the risk in all cases and under all circumstances.

We thus see that under the evidence produced by the plaintiff, which, in view of the finding of the jury, they must have believed, the question of whether the plaintiff assumed the risk cannot be determined as a matter of law, but was a question of fact for the jury. It was for the jury to say whether, under all the circumstances, the defendant met the duty that the law imposed upon it. Counsel entirely overlook the fact that, although plaintiff may have seen and observed the conditions surrounding him, and that the same may have been as open and obvious to him as to all others, yet that it does not necessarily follow that under all possible circumstances he also appreciated the danger that might arise from using certain implements or from pursuing a particular method in doing the particular work in moving and shifting the machine in question. While it is true that the conditions may be such that it may be determined as a matter of law that the using of certain implements, or by following a particular method, the servant assumed the risk, yet where, as here, the question is doubtful, it is for the jury and not for the court to determine. The district court submitted the case to the jury in accordance with the law as we have outlined it above.

Defendant's counsel, however, rely on the following cases decided by this court which they cite in support of their contention, namely: *Dunn* v. *Railroad Co.*, 28 Utah, 478, 80 Pac. 311; *Grandin* v. *So. Pac. Ry. Co.*, 30 Utah, 360, 85 Pac. 357; *Pulos* v. *Railroad*, 37 Utah, 238, 107 Pac. 241, Ann. Cas.

1912C, 218; *Busse* v. *Murray, etc., Co.*, 45 Utah, 596, 147 Pac. 626; *Owen* v. *San Pedro, etc., Ry. Co.*, 32 Utah, 208, 89 Pac. 825; *Virend* v. *Utah Ore-Sampling Co.*, 48 Utah, 398, 160 Pac. 115; and *Golesh* v. *Utah Apex, etc., Co.*, 49 Utah, 232, 162 Pac. 369. An examination of the foregoing cases will however, clearly show that what is there decided in no way controls the principles which control the case at bar. While the case of *Busse* v. *Murray, etc., Co.*, supra, falls more nearly within the principles involved here than any of the other cases cited, yet even that case is clearly distinguishable from the case at bar. It could subserve no good purpose for us to pause here to distinguish this case from the foregoing cases. In *Busse* v. *Murray, etc., Co.*, it is held that the tool or implement there used and under the circumstances there shown was such that the master, as a matter of law, was not liable. The circumstances of the case at bar, however, are different, and squarely come within the elementary principles of law we have quoted from Labatt. It is also true that in *Golesh* v. *Utah Apex, etc., Co.*, supra, we held that the servant had assumed the risk of injury, as a matter of law, but the facts and circumstances present in that case have no application here. The decision in that case is based upon the principle that the servant was employed by the master as an expert, and at the time of the injury was engaged in performing the master's duty of making the place safe for the other workmen. The servant, therefore, as a matter of law, assumed all the risks incident to the work he was engaged to do. That case is distinguished from the ordinary case and other cases like the one at bar in the later case of *Urich* v. *Utah Apex, etc., Co.*, 51 Utah, 206, 169 Pac. 263. Moreover, the case at bar is not one where the master provided his servant with certain tools and appliances with which to do the particular work in their own way and in accordance with their own judgment respecting the details, but in this case the assistant superintendent, who represented the master, not only selected the tools and appliances, but he personally directed and supervised the do˚˙˙˙ ˚f the work. Under all the facts and circumstances, therefore, this case is not one where it can be said that the plaintiff, as a matter of law, assumed

the risk, nor that the master had discharged the duty imposed upon him by law.

Defendant's counsel, however, also contend that the court erred in modifying a certain instruction offered by them upon the question of the assumption of risk by the plaintiff. That contention is not tenable. The court gave the requested instruction, but modified it by adding certain words. While the words added performed no special function, and, perhaps, strictly speaking, were not germane to the subject-matter contained in the instruction, yet the modification was not prejudicial to the defendant's rights. Indeed, the instruction as offered by counsel was too favorable to the defendant, in that it entirely ignored the element that the jury, in order to find that the plaintiff assumed the risk, must find that he appreciated the danger. In the instruction all that was required for the jury to find was that the plaintiff had full knowledge of the character of the tools and appliances used and of the method pursued in moving the machine. The modification made by the court, although it may not have been strictly proper, was, nevertheless, not prejudicial.

It is next insisted that the court erred in charging the jury as follows:

"It is the duty of the employer to furnish reasonably safe appliances, reasonably well adapted to do the work required to be done by the exercise of the ordinary care and prudence, *and this duty cannot be delegated to an agent or servant so as to enable him to escape responsibility.*"

The italicized portion is particularly excepted to. The charge is not erroneous. It is elementary that the master may not delegate the duties that are imposed upon him by law. While he may employ some one to discharge those duties, yet in discharging them the individual that may be selected for that purpose merely represents the master, and therefore the duty is not delegated.

It is next insisted that the court erred in refusing to give the concluding part of a certain charge in which the care the defendant was required to exercise under the circumstances

was defined.   The portion omitted by the court, and which omission is complained of, reads as follows:

"And if you find that the defendant used such degree of care in this case, then it would not be liable to plaintiff, notwithstanding the appliances furnished were not in fact safe."

A mere reading of the omitted part at once suggests that under the issues the charge was too narrow and too favorable to the defendant.   There were two elements to consider: (1) That the defendant had not furnished reasonably safe implements; and (2) that the method adopted was not reasonably safe.   Under the foregoing charge, if the jury merely found that the defendant had discharged its legal duty respecting the furnishing of implements, the jury were told that the defendant was not liable at all, while, as a matter of law, it would be merely absolved as to that matter, and not also as to the duty to adopt a reasonably safe method and to see that the appliances furnished were properly used. It is manifest, therefore, that no error was committed in refusing to give the excluded portion of the charge.

There is one or, perhaps, two other exceptions to the giving of instructions or to the refusal to charge as requested. Those, however, are not of such importance as to require further consideration, since no prejudice resulted in any of those instances.

It is next contended that the court erred in admitting in evidence certain radiographs or X-ray photographs, showing the condition of plaintiff's hip and hip joint.  It is insisted that the radiographs had a tendency to mislead the jurors who were merely laymen, and thus possessed no knowledge respecting the injuries to the bone or the hip or hip joint.  If the radiographs had been introduced for the purpose indicated by counsel, there would be much force to their contention.   A jury of laymen possessing no knowledge nor experience respecting the bones and injuries thereto might easily be misled by a mere X-ray photograph or radiograph by which at the best merely the outline of the bone can be shown.   The radiographs were, however, not introduced for the purpose indicated by counsel.   They were used by the doctors in illustrating their evidence, and were fully ex-

plained, and were introduced in evidence only as affording a fuller and clearer understanding by the jury of the doctors' testimony respecting the condition of plaintiff's injured hip and hip joint. The court committed no error in receiving the radiographs for the purpose for which they were received and used.

Finally, it is contended that the court erred in admitting certain expert evidence relating to the appliances used and the method pursued in moving the machine in question. A careful reading of the evidence as the same is certified in the original bill of exceptions has convinced us that there is no merit whatever to this assignment, and hence we refrain from discussing it.

From what has been said it follows that the judgment should be, and it accordingly is, affirmed. Respondent to recover costs.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.