PROCTOR v. TOWN CLUB, Inc.

No. 6489.   Decided September 20, 1943.   (141 P. 2d 156.)

*Judd, Ray, Quinney & Nebeker* and *Beverly S. Clendenin,* all of Salt Lake City, for appellant.

*F. Henri Henriod,* of Salt Lake City, for respondent.

McDONOUGH, Justice.

Appellant Town Club, Inc., seeks reversal of a judgment entered on a verdict in favor of Harry Proctor for personal injuries sustained by him on February 14, 1941.

Proctor was an interior decorator for a number of years prior to the time he was injured. He did painting, paper-hanging and decorating. He also installed drape rods and hung drapes. About two months before the injury herein-

after mentioned, he installed some drape rods for defendant. On February 14, 1941, he was called to the Town Club house in Salt Lake City to install some additional drape rods preparatory to hanging some drapes. He was admitted to the premises of defendant by the maid, who advised him as to where the rods were to be placed. He carried with him only hand tools. When he asked for a step-ladder, he was informed by the maid that the ladder was in the garage. On the previous occasion when he hung drapes he was furnished the use of the same stepladder. Proctor charged by the hour for his services, but he determined his own methods for installing the rods.

By his complaint he alleged that the stepladder was defective, that the defective condition was unknown to him, although known to defendant or that such defects could have been known to defendant by the use of reasonable and prudent care in making proper inspection of the ladder; that while he was in the exercise of due care, on the top of said ladder and while performing the service of installing such drape rods, said ladder spread and collapsed, causing him to be thrown to the floor; and that as a result of such fall he suffered injuries for which he prayed damages.

There appears to be no dispute as to the fact that plaintiff sustained injuries by being thrown to the floor by the spreading of the ladder while he was on the top step. Appellant does not deny the alleged injuries nor the resulting disability, but contends that there is no competent proof of any negligence on the part of defendant which as a matter of fact or of law could have been the proximate cause of the fall which produced the injuries. It pleaded assumption of risk and contributory negligence as well as a denial of negligence on its part. Appellant contends that the trial court erred in refusing to direct a verdict in its favor.

Plaintiff testified that he was familiar with stepladders generally; that he had used many of them in his work during a period of approximately 25 years; that he always made an examination of a ladder before using it; that in

December, 1940 he had used this same ladder and it did not break; and that he examined it on the date the injuries occurred, prior to getting upon it. He testified that he first examined the brackets in the steps—the iron supports extending from one side of the ladder to the other; and that he examined the ladder "to see how it wiggles and shakes." He declared that it was apparently in good condition, and that he did not find anything wrong with it, nor see any reason why he should not use it. He had a rod 6 feet 8 inches in length to set, so he placed the ladder first at one side of the archway, and then at the other side to put up the two end brackets. On both of these occasions he got on top of the stepladder and installed the brackets, and then moved the ladder to the center of the archway to install the middle one. He was on top of the ladder for the third time and in the process of completing the installation of the center drape rod support, when the ladder suddenly spread and collapsed, throwing him to the floor and causing the complained of injuries. He made no examination of the ladder after he fell.

There was some conflict in the testimony as to whether a ladder produced in court by defendant was the ladder used on that occasion by plaintiff. The ladder exhibited was one which a witness for defendant testified she used in washing windows and that it was the only one on the premises; and that after plaintiff fell, the defendant procured a new one. The ladder produced in court showed the connecting metal strap between the two hinged parts had become disconnected because some screws which fastened it at one end pulled out in some manner. Admittedly, defendant had not, prior to the collapse of the ladder, made any inspection of it.

Whether or not defendant was guilty of some actionable negligence depends, of course, upon what duty of care was owing the plaintiff under the circumstances. Appellant takes the position that though it be held that respondent was its servant at the time of the injury (which it denies), never-

theless, under the "simple tool and appliance" rule, which it contends is applicable here under the recited facts, no actionable negligence is shown. Its position on this phase of the case is well expressed in the case of *Newbern* v. *Great Atlantic & Pacific Tea Co.*, 4 Cir., 68 F. 2d 523, 525, 91 A. L. R. 784:

"It is well settled that, while it is the duty of the master, in exercise of reasonable care for the safety of the employee, to see that machinery and appliances which may cause injury to him are in reasonably safe condition, this duty does not ordinarily exist with respect to simple tools from the use of which no danger is reasonably to be apprehended or as to which the employee is in a better position than the master to discover defects. [Cases cited.] This is true, not because the employee assumes the risk of injury from defects in such tools, but because the possibility of injury is so remote as not to impose upon the master the duty of seeing that they are free from defects in the first instance or of inspecting them thereafter. The fact that the employee has better opportunity than the master to judge of the defects of such tools, that no inspection is necessary to discover such defects, and that no danger is to be apprehended which the employee cannot guard himself against, renders it unnecessary in ordinary cases that the master exercise with respect to simple tools the care that the law requires with respect to more complicated machinery. * * *"

In some cases the rule is said to be grounded on the theory of assumption of risk. See 13 L. R. A., N. S., 687, note. Express provisions in workmen's compensation laws generally preclude the defense of "assumption of risk" and other common-law defenses, in actions by employees against their employers for injuries sustained in the course of employment. Some courts have held that such statutes do not alter the simple tool and appliance rule, for the reason that the employer is not negligent if he owes no duty to make an inspection. In *Maher* v. *Wagner*, 62 S. D. 227, 252 N. W. 647, 648, the court said:

"Some confusion has arisen due to the fact that some of the cases take the position that the simple tool doctrine is based, or finds the reason for its existence, upon the doctrine of 'assumption of risk' by the employee. See *Allen Gravel Co.* v. *Yarbrough, supra* [133 Miss.

652, 98 So. 117]. However, the phrase 'assumption of risk' is used with two different meanings. In its original sense, it referred to the ordinary and inherent risks of employment, and, so far as 'assumption of risk' in this sense of the word barred recovery by a servant injured in the course of employment, it did so because there was no breach of the master's duty, no actionable fault on the part of the master, and hence no cause of action. * * * See 28 Harvard Law Review, 163, 176, and annotations 28 L. R. A., N. S., 1250.

"In the first meaning of the phrase, 'assumption of risk' is not in any proper sense a defense at all. It is merely a phrase used to convey the idea that the master is not an insurer and is not guilty of actionable fault. In other words, that there is no cause of action. It it with this meaning of the phrase, we are satisfied, that the term 'assumption of risk' should be applied to the simple tool doctrine. * * *"

In *Hedicke* v. *Highland Springs Co.*, 185 Minn. 79, 239 N. W. 896, 897, the court explained:

"* * * Our decisions, moreover, predicate the simple tool doctrine upon the theory that as to such a tool the master owes the servant no duty to inspect for the purpose of discovering whether the ordinary use had produced some defect therein which would endanger the user. If there is no duty to discover and remedy such defects, of course, there can be no negligence inferred from the mere proof that defects developed in the use of a simple appliance. * * * So we think the law is established that no actionable negligence of an employer is shown when an employee is injured, from a defect resultant from the ordinary use of a simple tool or appliance. And it matters not what affirmative defenses the statute has deprived the employer of, the employee must prove negligence, if recovery is to be had for injuries received in the employment."

Respondent's counter-contention is two-fold: (1) That a stepladder is not a simple tool or appliance; and (2) even if it were held to be such, the rule relative thereto has been repudiated in this jurisdiction.

There are numerous cases which hold that a ladder is in the class of ordinary tools, and that when an employee uses it in the course of his usual employment, he is chargeable with knowledge equal to that of his employer of all obvious or discoverable defects. *Sheridan* v. *Gorham Mfg. Co.*, 28 R. I. 256, 66 A. 576, 13 L. R. A.,

N. S., 687; *Meador* v. *Lake Shore & M. S. Ry. Co.*, 138 Ind. 290, 37 N. E. 721, 46 Ann. St. Rep. 384; *Marsh* v. *Chickering*, 101 N. Y. 396, 5 N. E. 56; *Cahill* v. *Hilton*, 106 N. Y. 512, 13 N. E. 339; *Borden* v. *Daisy Roller Mill Co.*, 98 Wis. 407, 74 N. W. 91, 67 Am. St. Rep. 816. In *McKay* v. *Hand*, 168 Mass. 270, 47 N. E. 104, a combination of ladders was held not to come within the definition of "ways, works or machinery" in a statute imposing upon employers liability for defects therein; and where the only evidence of defect was that it broke and that a sound ladder would not have broken under the circumstances, there was no evidence of negligence on the part of the employer.

While there are several rulings which do not include a ladder within the scope of the "small tool and appliance" doctrine, the majority of courts hold that a small portable stepladder is a simple tool or appliance, which is within the class of implements excepted from the re- ■ requirement that the employer inspect and provide his employees with safe tools and appliances with which to work. *Nichols* v. *Bush*, 291 Mich. 473, 289 N. W. 219; *Kelley* v. *Brown*, 262 Mich. 356, 247 N. W. 900; *Hall* v. *United States Canning Co.*, 76 App. Div. 475, 78 N. Y. S. 617; and as to ladders generally: *Sivley Co.* v. *Nixon Mining Drill Co.*, 128 Tenn. 675, 164 S. W. 772, 51 L. R. A., N. S., 337; *Philip Carey Roofing & Mfg. Co.* v. *Black*, 129 Tenn. 30, 164 S. W. 1183, 51 L. R. A., N. S., 340; *Blundell* v. *W. A. Miller Elevator Mfg. Co.*, 189 Mo. 552, 88 S. W. 103.

Respondent cites *Russell* v. *Borden's Condensed Milk Co.*, 53 Utah 457, 174 P. 633, 635, in support of his second contention and asserts that whether or not plaintiff assumed the risk and whether or not defendant was negligent in furnishing safe tools and appliances, under that case such matters are to be determined by the jury. Reference to the opinion indicates that the tool or instrument with which the plaintiff had to work was operated under the control and direction of the defendant. There were other employees putting their weight on the same lever under the direction

of the superintendent of defendant when the lever broke and caused the injuries to plaintiff. This court held that the "simple tool and appliance rule" did not apply under the facts of that case. There, the fundamental question was not whether the lever was defective as such, but whether it was a tool or appliance reasonably suited to the type of work which the defendant directed to be performed. In that case the method of use and operation was selected by the defendant, and every act of the plaintiff was alleged to be under the specific direction of defendant, not only as to the instrument used, but also as to how it was used.

However, speaking through Mr. Chief Justice Frick, in discussing the rule in question the court did state:

"It does not necessarily follow that because tools or appliances are simple the servant for that reason, and under all circumstances, assumes the risk as a matter of law. The law imposes a duty on the master to furnish and provide his servants with 'such appliances as are reasonably safe and suitable.'"

The court then quotes from Labatt on Master and Servant as follows:

"'It is submitted that, as has been indicated above, it is illogical and unreasonable to say that the master is free from the obligation of using ordinary care merely because the appliance he furnished is a simple tool, but the better view is that, the appliance being a simple tool, and entirely understood by the servant, the latter's obligations to his master and to himself are increased; and cases involving injuries from simple tools furnish a broader scope for the application of the various affirmative defenses which are ordinarily available to the master.'"

The opinion then continues:

"It will thus be observed that the use of simple tools or appliances under certain circumstances simply enlarge the scope of the master's defense, but it does not necessarily imply that the servant assumes the risk in all cases and under all circumstances."

Yet, in the conclusion of the discussion of such subject the opinion in 53 Utah at page 465, 174 P. at page 636, says:

"Moreover, the case at bar is not one where the master provided his servant with certain tools and appliances with which to do the particular work in their own way and in accordance with their own judgment respecting the details, but in this case the assistant superintendent, who represented the master, not only selected the tools and appliances, but he personally directed and supervised the details of the work. Under all the facts and circumstances, therefore, this case is not one where it can be said that the plaintiff, as a matter of law, assumed the risk, nor that the master had discharged the duty imposed upon him by law."

However, in a later case, *Guitron* v. *Oregon S. L. R. Co.*, 62 Utah 76, 217 P. 971, 973, involving the furnishing of a chisel by the employer to the plaintiff employee, this statement is made:

"It is claimed by appellant that an employee as a matter of law assumes the risk of an injury from a defective tool when it is in the class of what is known as a simple tool. It is the duty of the employer to be reasonably prudent and careful in selecting and furnishing tools that are reasonably safe and suitable for the work done with them. In this jurisdiction it is held that such duty applies when what are known as simple tools are furnished." *Russell* v. *Borden's Condensed Milk Co.*, supra, is cited in support of such observation.

The last sentence of the quotation is broader than the case cited in support thereof, and the court in the Guitron case held as a matter of law, despite the observations relative to the small tool doctrine that there was no negligence shown on the part of the employer. Nevertheless, we may assume for purposes of this case, without so deciding, that as to a simple as well as to a more complex tool or instrumentality, a master who furnishes to his workmen regularly employed, such tool as an incident of his regular business, has the duty of prudently inspecting it or be liable for injuries resulting from defects which inspection would have revealed; unless the servant has knowledge of such defect and is aware of and appreciates the dangers arising from its use, or unless the defect and danger are so open and obvious that an ordinarily prudent person would have observed and appreciated them. *Guitron* v. *Oregon S. L. R. Co.*,

supra. Still we are confronted with the question of whether the law should extend such duty and consequent liability to the relationship here shown by the evidence to have resulted from the undertaking upon the part of the respondent to install the drape rods for appellant.

As hereinabove indicated, respondent was in an established business of his own; he engaged to do a definite job or piece of work within the field of his occupation or business for appellant, but at appellant's premises; he was apparently subject to the control of appellant only as to the results and not as to the means and methods of performance, although he was paid by the hour rather than by the piece of work.

These elements are usually present in the same combination whenever a householder calls a plumber to fix a pipe; a mechanic to repair a refrigerator, or a thermostat; or a paper-hanger to paper a room. If such householder should happen to furnish the workman with a simple tool with which to aid him in doing his work, does the law impose on him the duty of prudent inspection of such tool, or should the simple tool doctrine be applied? We are of the opinion that whether such workman be held to be an independent contractor or a casual employee the "simple tool" rule is applicable. It might well be be reasonable to impose the duty of prudent inspection upon an employer who secures such tools for use in the occupation in which he is generally engaged, and yet be unreasonable to fasten liability for failure to so inspect, upon one who furnishes a simple tool or instrumentality to an artisan engaged to do a definite job in which the latter is skilled and to whom the proper use of such instrumentality and the possibility of latent defects therein as well as methods of discovery and remedy thereof, would ordinarily be much better known than to the one for whom the work is performed. In such case the workman has no right to assume that the person for whom the job is to be performed has

prudently inspected the instrumentality in order to discover defects.

Even if defendant in the instant case had made the inspection of the ladder hereinabove described which plaintiff himself made prior to using it, it cannot be inferred that whatever defect existed which escaped the scrutiny of plaintiff could have been discovered by defendant. In order to find a breach of duty owning from defendant to plaintiff, it would be necessary to hold that the general rule which requires an employer to supply safe machinery and appliances to his employees, would be applicable to the relationship here shown. As hereinabove indicated, we do not believe such rule to be applicable in this situation. Consequently, we hold that the evidence failed to disclose any breach of duty or any want of due care on the part of defendant, and hence no negligence. The motion for a directed verdict in favor of defendant, therefore, should have been granted. The judgment is accordingly reversed and the cause is remanded to the trial court with directions to enter judgment in favor of defendant. Costs to appellant.

WOLFE, C. J., LARSON and MOFFATT, JJ., and WM. L. HOYT, District Judge, concur.

PRATT, J., on leave of absence.