417 P.2d 898

**Mearl R. METZ, Plaintiff-Appellant,**

v.

**Elden J. HASKELL, dba Holiday Motel,
Defendant-Respondent.**

**No. 9519.**

Supreme Court of Idaho.

Sept. 8, 1966.

May & May, Twin Falls, for appellant.

Parry, Robertson & Daly and Kramer, Walker, Pope & Plankey, Twin Falls, for respondent.

McQUADE, Justice.

■ This appeal is from an order granting a summary judgment in favor of the defendant-respondent, Elden J. Haskell, dba Holiday Motel, at Twin Falls. For consideration of a motion for summary judgment, on appeal this court views the evidence in that light most favorable to the appellant and resolves all doubts in his favor. Sutton v. Brown, 85 Idaho 104, 375 P.2d 990 (1962).

Mearl Metz, plaintiff-appellant herein, was employed by Long's Radio and T.V. Service of Twin Falls, Idaho. His duties included "antenna work and doing odd jobs." However, he rarely climbed ladders to install or repair roof antennas; he "usually put the antennas together down on the ground, and then they [his employers] pulled them up by rope." In the late afternoon of June 29, 1960, Metz delivered, in his own panel truck, two television stands to Haskell at the motel. While at the motel Haskell asked Metz to check the television set in his personal apartment. Metz noticed that the lead-in wire to the antenna on the roof was disconnected. Metz stated to Haskell that he could repair the antenna but that he would have to return to the shop to obtain a ladder as he did not have one with him that was high enough to reach the roof. Haskell, however, offered Metz the use of a ladder which was on the premises. Haskell located the ladder and set it up against the building. The ladder, as described by the trial court:

"* * * was so designed and hinged that when the rear two legs were chained to the front legs to prevent spreading the ladder could be used as a regular stepladder, or unchained, the rear legs could be extended on a prolongation of the front legs to form a straight ladder designed to be leaned against buildings or other structures to provide greater ladder

height. It was with the ladder in the latter position that plaintiff sought to climb to defendant's roof."

Metz proceeded to climb the ladder. Just before he was about to step onto the roof, the ladder broke, Metz fell to the ground and sustained injuries.[1]

The ladder was further described by the trial court:

"It is obviously a very old and weather-beaten ladder; the metal parts are largely rusty; the bottom rung on the front part was missing before plaintiff attempted its use; all of the wooden parts are the grained, dirty-grey of long weathered wood and none show any trace of the original paint or varnish finish."

Haskell stated that he had found the ladder in the weeds near the motel on the morning of the accident and that it "had been laying there sometime." He also stated that he had never inspected the ladder prior to Metz' use of it except for his own purposes when he used the lower few rungs earlier in the day of the accident to reach some windows. He also stated that it "didn't show any signs of breaks." Metz stated that after Haskell hooked up the ladder to its extended position and set it up against the building, he, Metz, did not look at or inspect the ladder but assumed that it was "all right."

The oral depositions of Metz and Haskell were the only testimony before the trial court. The court granted defendant's motion for summary judgment and found "as a matter of law that the ladder involved in this case was a 'simple tool', that the 'simple tool doctrine' applies, that the defendant owed no duty to inspect, warn or protect and that there was, therefore, no negligence on the part of the defendant."

■ As a general rule it may be stated that when one undertakes to furnish another with a tool or instrument for the latter's

---

1. It should be noted that defendant disputes in numerous particulars the details leading up to the accident, as related in the above fact statements, particularly with respect to his supplying the ladder to the plaintiff. As stated, however, on summary judgment the opponent's version of disputed facts will be accepted as true. Jack v. Fillmore, 85 Idaho 36, 375 P.2d 321 (1962).

use, the supplier is under a duty to supply a proper and safe implement and not to be negligent in furnishing one that is defective. 65 C.J.S. Negligence § 70. Ordinarily, this problem arises most frequently with respect to an employer furnishing his employee with a defective tool or instrument. See, e. g., Williams v. Collett, 80 Idaho 462, 332 P.2d 1032 (1958); I.C. § 44–1401; 56 C.J.S. Master and Servant §§ 205 and 235; 35 Am.Jur. Master and Servant § 175. Liability of the supplier, however, is not limited to those instances in which he is the user's employer but extends generally to anyone who negligently furnishes another with a defective tool. Restatement 2d, Torts §§ 388, 389 and 405 and comments thereon; 35 Am.Jur. Master and Servant § 162; Annot. 44 A.L.R. 932, § 27. This rule is especially applicable in the present case where it appears that Metz intended to return to his employer's shop to obtain a suitable ladder, but Haskell suggested that he use the ladder which was on the premises.

Respondent asserts, however, that he was relieved of any obligation to provide a safe ladder by reason of the "simple tool doctrine" and that the ladder was a "simple tool," citing Proctor v. Town Club, 105 Utah 72, 141 P.2d 156 (1943). See also Annot. 145 A.L.R. 542. Without deciding that this doctrine is available to Haskell as a defense even though he was not Metz' employer, the "simple tool doctrine" has been defined as follows:

"The rule that an employer is charged with the duties of using reasonable care in furnishing employees with implements, tools, and appliances reasonably safe for the use for which they are intended and of inspecting them from time to time to see that they remain in this reasonably safe condition, which is predicated upon the superior opportunity of the employer to provide for the safety of employees, has only little application where the tools or appliances furnished are of a simple nature, easily understood and comprehended, and *the defects in them can be readily observed by persons of ordinary intelligence.* The so-called 'simple tool' rule is based on the ideas that *ordinarily the employee has better opportunity than the employer to observe defects and guard himself against them,* and that the employer should not be charged with the duty to care for the safety of an employee with respect to a matter in which the employee is in the better position to care for himself. The most frequent application of this doctrine is found in those cases which hold the employer to be under no obligation to inspect simple tools which he has placed in the hands of his employee for use. It does not seem entirely logical, however, to say that the employer is under no obligation to exercise ordinary care to furnish reasonably safe appliances simply because those appliances chance to be of a simple character, and an analysis of the cases indicates that the *mere simplicity of the tools does not alone exempt the employer from all care or relieve him from all liability under all circumstances;* among factors that must be taken into consideration are the capacity, intelligence, and experience of the employee, the character of the defects, the *employee's opportunity for detecting them, or the circumstances calculated to withdraw his attention from them.* It will be found that in most cases where the simple tool rule or exception is applied the controversy is between an employer and an employee to whom the employer furnished the tool, and *the defect is one so apparent that the employee is guilty of negligence in using the tool, or where he knew of its condition or had equal opportunity with the employer for knowing it.* It cannot be doubted that in many cases where injuries were caused by defects in simple tools, the ordinary rules in regard to the employer's liability to use ordinary care to furnish a reasonably safe appliance have been applied without reference to the character of the defective appliance as the simple tool." (Emphasis added; footnotes omitted.) 35 Am.Jur. Master and Servant § 177.

In 56 C.J.S. Master and Servant § 235 at pp. 990–992, the doctrine is defined thusly:

"*Simple or common tools and appliances.* An employer is under no obligation to his servants to inspect during their use those common tools and appliances with which every one is familiar, to discover defects which result from ordinary use and *are, or should be, as well-known to the servant as to the master, provided, it has been held, the employer has exercised ordinary care to furnish tools which are reasonably safe.* A simple tool within the rule is one which has no complications in structure and is of such ordinary use that any normally intelligent person of mature age or of experience will have substantially as much knowledge as another and can use it in the ordinary and normal manner without incurring more than a bare possibility of injury.

"*Mere simplicity of the tool or appliance, however, will not relieve the master of all duty to inspect in every situation.* The question whether he is relieved of that duty is dependent on the facts and circumstances of the particular case, and not on the tool or appliance alone. Nonliability in such cases rests on the *assumption that the employee is in as good, if not better, position to observe the defect as the employer.* The comparative knowledge of the master and servant is the test of the master's liability for injury occasioned by the use of simple tools; *and, where the conditions are such that the employee does not have such an opportunity for inspection of the tool, the simple tool rule is not applicable.* The application of the rule depends, among other things, on the nature of the employment; the locality where the work is to be performed; the use to which the tool is to be put by the employee; whether the tool is subjected to any other stress than the muscular effort of the person using it; and on the employee's age and experience, his intelligence and skill, capacity to appreciate danger, and familiarity with the work to be done." (Emphasis added; footnotes omitted.)

██ Under the facts of this case the simple tool doctrine is not available to respondent as a defense by way of summary judgment. As stated in both Am.Jur. and C.J.S., the mere simplicity of the tool does not relieve the supplier of all duty to reasonably inspect the instrument in every situation but depends on the facts and circumstances of each case. The facts indicate that Metz was *not* in a superior position than Haskell to discover the defect, which contradicts the underlying basis of the rule. Haskell not only went to the garage to obtain the ladder but set it up against the building by himself. The break occurred on the extension portion of the ladder which, at the time Metz began to ascend the ladder, was about six feet above the ground. It does not appear in the record that Metz had an opportunity to adequately inspect this portion of the ladder. Furthermore, as Haskell stated in his deposition, the ladder was not his, he had found the ladder in the weeds near the motel that morning, he had used it prior to the accident, and it was old and dilapidated. He was in a better position than Metz to know, as well as to discover, defects in the ladder which could cause injuries to an unsuspecting user. Metz was unaware of any of these facts. The character of the defective condition, which is another factor to consider when the rule is sought to be applied, was such that even had Metz inspected the ladder, it could not have been discovered easily. Haskell himself testified that the ladder showed no signs of cracks at the place in which it broke and that the break was a "completely new break." To apply the "simple tool doctrine" to these facts would result in serious injustice and would inequitably relieve the supplier of liability for his negligence should that be proved. We, therefore, hold the doctrine inapplicable to these facts. This determination makes it unnecessary to decide whether the extension ladder involved herein was a "simple tool."

Proctor v. Town Club, supra, one of the primary cases relied upon by Haskell to support his contention that the "simple tool doctrine" precludes Metz from recovery, is readily distinguishable from the case before us. In *Proctor* the plaintiff was a self-employed interior decorator who had regularly utilized ladders during the 25 years of his work. He was employed to install drapery rods at defendant's house. He did not have a ladder with him and asked the maid for one. She informed him that a ladder was in the garage. The plaintiff obtained the ladder, which apparently was an ordinary rather than an extension ladder, and set it up himself. He inspected and examined the ladder before proceeding to use it and had ascended and descended it twice before the legs spread and collapsed on the third occasion. The accident was caused by the loosening of screws connecting a metal strap between the two legs. The Utah court held that the "simple tool doctrine" was applicable to these facts and reversed a judgment in favor of the plaintiff. It is apparent that the plaintiff in *Proctor*, unlike Metz, *was* in a position superior to the supplier to discover defects in the ladder. Furthermore, the defect in *Proctor*—loose screws—was one that was readily discoverable by the plaintiff who *had the opportunity* to, and actually did, inspect the ladder before using it. Such was not true in the instant case.

■ Respondent seeks to uphold the judgment on the grounds of contributory negligence and assumption of the risk. The trial court, in its memorandum decision, discusses these defenses in one sentence:

"The same result would be true here even if the 'simple tool doctrine' did not apply, for certainly, as a matter of law, under the established facts, it would have to be held that plaintiff assumed the risk and was contributorily negligent, irrespective of any duty which might otherwise have been owed by defendant."

We disagree. As for contributory negligence, there is no evidence that Metz used the ladder in a negligent manner. In fact, Haskell, in his deposition, affirmatively stated the opposite to be true.

"Q  Now, did Mr. Metz climb the ladder in a normal fashion?

"A  Yes, as far as I know.

"Q  Nothing unusual in the way he went up the ladder, no jumping or lunging or anything to be likely to break it?

"A  No."

■■ And, we cannot agree that Metz, as a matter of law, assumed the risk when he undertook to utilize the ladder supplied to him by Haskell. To assume the risk one must know the facts and appreciate the danger. This ordinarily is a question of fact to be resolved by the trier of facts and should not be resolved as a matter of law by the court unless the evidence is susceptible of one and only one interpretation upon which reasonable minds could not differ. DeShazer v. Tompkins, 89 Idaho 347, 404 P.2d 604 (1965). The evidence before us fails to satisfy this retirement and the trial court was in error when it ruled that Metz, as a matter of law, assumed the risk.

The judgment is reversed and the cause is remanded for further proceedings consistent with the opinion herein.

Costs to appellant.

McFADDEN, C. J., and TAYLOR and SPEAR, JJ., concur.

SCOGGIN, District Judge (dissenting).

I dissent from the majority view and feel the decision rendered by the District Court should be affirmed.