Lenhart GROTHE, d/b/a Northern Exploration & Equipment Co., Appellant,

v.

Theodore T. OLAFSON, Appellee.

No. 5766.

Supreme Court of Alaska.

Feb. 18, 1983.

Paul W. Waggoner, Paul W. Waggoner, Inc., Anchorage, for appellant.

Gerald W. Markham, Kodiak, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

OPINION

RABINOWITZ, Justice.

This case involves an action for damages for personal injuries Theodore Olafson received while engaged in drilling and blasting work for Lenhart Grothe. The superior court rendered a judgment for Olafson,

finding: 1) that Olafson was working as an employee of Grothe; 2) that Grothe was negligent in failing to provide Olafson with safe working conditions and equipment; 3) that Grothe's negligence was a proximate cause of the injuries to Olafson; 4) that Grothe was not entitled to raise the defense of comparative negligence; and 5) that Olafson was entitled to $56,133 in damages. Grothe appeals.

Lenhart Grothe, d/b/a Northern Exploration & Equipment, Co., is a mining engineer who operates a tin mine near Nome and develops subdivisions in Kodiak. Theodore Olafson is a retired member of the laborer's union who worked for over 40 years as a driller and blaster of rock.[1] In 1978, Grothe was developing a 32-acre parcel of land in Kodiak which contained a large rock formation. Grothe wanted to level the rock promontory so that he could install sewer and water lines as well as build on the levelled land. The rock and gravel which was produced would be available for the construction of roads in the subdivision and for sale to other contractors.[2]

In early June of 1978, Grothe hired Olafson to drill and blast the rock, and Olafson immediately began working. The drilling work involved the use of a large tractor-treaded hydraulic drill which is used to drive steel rods into the rock. The part of the drill which drives the steel is called the "hammer" which is mounted on the "mast" and moves up and down on a chain. The mast is attached to the "boom" which connects to the main body of the tractor. The drilling machine used by Olafson belonged to Grothe.

The afternoon before the accident Olafson was operating the machine when the drive chain broke. To repair the chain, it is necessary to lower the mast, remove, repair and reinstall the chain, and then raise the mast. In order to raise and lower the mast, one of the connecting pins must be removed and then reinserted. Olafson repaired the chain that evening and returned the next morning to reconnect the mast and resume drilling.

Olafson was injured while he was attempting to align the holes so that he could reinsert the connecting pin. Normally, the holes can be positioned by using the hydraulic system to raise the mast. Olafson testified that the hydraulic system on the drill was too weak to raise the mast from its horizontal position. He attempted, instead, to raise the mast by driving the drill forward on its tracks while the bottom of the mast was braced against a rock bank. Evidently, while Olafson was attempting to insert the pin, the hydraulic lever controlling the position of the hammer vibrated open, causing the hammer to rise on the mast. This caused the mast to become unbalanced and it flipped backwards, striking Olafson on the right side.[3] Olafson was taken to the hospital and was treated for multiple rib fractures. He remained in the hospital for four days.

After the injury, Olafson initially filed a claim with the Worker's Compensation Board. After learning that Grothe had no worker's compensation insurance, Olafson elected to maintain a tort action for damages rather than a worker's compensation claim.[4]

---

1. At the time of the accident Olafson was 74 years old. Although he claimed he was retired from the union in 1977, receiving his union pension and social security, Olafson continued to seek employment and occasionally got jobs as a driller and blaster. The trial court found that except for the accident Olafson could have continued working for five more years.

2. Grothe testified he wanted from 4,000 to 8,000 cubic yards of rock produced.

3. Although this account of the accident is somewhat speculative, both parties seem to have accepted this version of the accident.

4. AS 23.30.055 provides in part:
   [I]f an employer fails to secure payment of compensation as required by this chapter, an injured employee or his legal representative in case death results from the injury may elect to claim compensation under this chapter, or to maintain an action against the employer at law or in admiralty for damages on account of the injury or death. . . .

At the conclusion of a non-jury trial, the court rendered a judgment in Olafson's favor, but ruled that his recovery would be reduced to reflect his own comparative negligence. Olafson then filed a motion for amendment to findings and conclusions of law.[5] He asked the superior court to reconsider its ruling regarding the defense of comparative negligence in light of *Carroll v. Universal Irrigation, Inc.*, 18 Wash.App. 854, 573 P.2d 373 (Wash.App.1977).[6] The superior court granted Olafson's motion and amended its conclusions so as to preclude any reduction in damages for Olafson's comparative negligence.

Grothe then filed a motion for reconsideration of the comparative negligence issue. Grothe also filed a motion for relief from judgment under Civil Rule 60(b). Both of these motions were denied, and this appeal followed.

**I. *Did The Superior Court Err In Holding That Olafson Was An Employee Rather Than An Independent Contractor?***

■ The superior court concluded that the relationship between Grothe and Olafson was one of employer/employee rather than general contractor/independent contractor. The court based this determination on application of the "relative nature of the work" test, set out in *Ostrem v. Alaska Workmen's Compensation Board*, 511 P.2d 1061 (Alaska 1973). Grothe claims the superior court's determination is unsupported by the evidence and erroneous as a matter of law.

In *Searfus v. Northern Gas Co., Inc.*, 472 P.2d 966 (Alaska 1970), this court announced that it was adopting the "nature of the work" test for determining whether a person is an "employee" under the Alaska Worker's Compensation Act.[7] Rejecting the traditional "master-servant control"

test we turned to the analysis advocated by Professor Larson.[8]

Terming this approach the "relative nature of the work" test, Larson would have the trier of fact determine 'employee' status through consideration of the character of the claimant's work or business, and the relationship of the claimant's work or business to the purported employer's business.

*Id.* at 969. In *Ostrem v. Alaska Workmen's Compensation Board*, 511 P.2d 1061 (Alaska 1973), we subsequently refined the test:

The 'relative nature of the work' test has two parts: first, the character of the claimant's work or business; and second, the relationship of the claimant's work or business to the purported employer's business.... With reference to the character of claimant's work or business the factors are: (a) the degree of skill involved; (b) the degree to which it is a separate calling or business; and (c) the extent to which it can be expected to carry its own accident burden. The relationship of the claimant's work or business to the purported employer's business requires consideration of: (a) the extent to which claimant's work is a regular part of the employer's regular work; (b) whether claimant's work is continuous or intermittent; and (c) whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of the particular job.

*Id.* at 1063.

Initially, the superior court focused on the character of Olafson's work. The court found that Olafson was employed as an unskilled laborer. While it is true that Olafson was a member of the laborer's union, his work for Grothe involved drilling

---

**5.** The motion was made pursuant to Alaska R.Civ.Pro. 52, 59.

**6.** In *Carroll,* a Washington appellate court interpreted the Alaska Worker's Compensation Act as mandating that when an employer fails to secure worker's compensation insurance, and the employee elects to maintain an action

at law (*see* note 4, *supra*), the employer may not plead the employee's comparative negligence as a defense. 573 P.2d 373, 376–77.

**7.** AS 23.30.005–.270.

**8.** 1C. Larson, Workmen's Compensation Law § 43.52 (1980).

and blasting, a profession which requires certification and licensing by the state. Even Olafson concedes the job requires some special skills. The superior court recognized this distinction in its second finding that Olafson worked as a "powder monkey," and that this was a separate calling since the evidence showed there were only three or four people working in that field in Kodiak.

As to the extent to which Olafson could be expected to carry his own insurance, the superior court found that the inherent danger of the work (dynamiting) made it unreasonable for Olafson to be self-insured. Olafson emphasizes the dangerous nature of the work as support for the argument that Grothe, not Olafson, should bear the burden of insurance coverage. One commentator has observed:

> The most helpful criterion suggested for use in examining the nature of the claimant's work is probably the inquiry into whether the claimant can be expected to carry his own accident burden. This consideration focuses on the economics of the independent contractor's status. Since workmen's compensation is designed to help the ordinary worker whom experience has shown is unable to meet the costs of industrial accidents out of his own resources, it is relevant to examine whether the realities of his position actually indicate this dependence on an employer's assumption of risks as a normal consequence of hiring him.[9]

Since Grothe was a developer engaged in the use and occasional sale of the rock, it was more reasonable for Grothe to bear the risk of its production.

The superior court next considered the relationship of Olafson's work to Grothe's business. The superior court found that it was a regular part of Grothe's business because Grothe was in the mining business and previously had been involved in extracting rock from the subdivision. The trial court also considered whether Olafson's work was continuous or intermittent in nature and concluded that it was the latter. The third and final *Ostrem* factor the superior court considered was whether Olafson's work amounted to a hiring of continuing services as distinguished from contracting for a particular job. The court concluded that Olafson was hired for a single job, drilling and blasting work.

Based on the foregoing, the superior court concluded that:

> Viewing the evidence as a whole, the court has concluded that it preponderates in favor of an employer, employee relationship rather than one of general contractor, independent contractor.

Although we view the question as an extremely close one, we are persuaded that the superior court did not err in finding an employment relationship.[10]

II. *Did The Superior Court Err In Finding Grothe Negligent?*

A. *Duty owed*

■ Grothe was under a duty to avoid creating a situation which would pose an unreasonable risk of harm to Olafson. *Nazareno v. Urie*, 638 P.2d 671 (Alaska 1981). In addition, since Grothe furnished the drill which was used by Olafson, he was under the further duty to exercise reasonable care to ensure that the drill was safe for its intended use.[11]

■ In its findings, the superior court cited several federal safety regulations originally promulgated, pursuant to the Federal Metal and Non-Metallic Mine Safety Act, 30 U.S.C.A. §§ 721–740. Thirty

---

**9.** 1 U.C.L.A.–Alaska Law Review 40, 55–56 (1971).

**10.** One of the more significant factors in our holding affirming the superior court's finding of an employer-employee relationship is resolution of the "burden of insurance" factor. We are also cognizant of the general trend towards liberalizing the scope of workers' compensation

coverage. *Juneau Lumber Co. v. Alaska Industrial Board*, 122 F.Supp. 663 (D.Alaska 1954). In this regard see also: *Searfus v. Northern Gas Co., Inc.*, 472 P.2d 966, 969 (Alaska 1970).

**11.** *Metz v. Haskell*, 91 Idaho 160, 417 P.2d 898 (Idaho 1966); Restatement (Second) of Torts § 392 (1965).

C.F.R. 56.14–25 directs that mining "machinery and equipment should be maintained properly." Thirty C.F.R. 56.14–26 states that "unsafe equipment or machinery shall be removed from service immediately." Finally, 30 C.F.R. 56.18–20 provides:

> *Mandatory.* No employee shall be assigned, or allowed, or be required to perform work alone in any area where hazardous conditions exist that would endanger his safety unless he can communicate with others, can be heard, or can be seen.

The superior court did not specifically state that it found Grothe to be negligent per se for violation of these regulations. Since the court phrased its conclusions of negligence in the language of the regulations, however, it seems the superior court did adopt the regulatory provisions as the applicable standard of care in this case.

■ Assuming that Grothe's excavation is subject to the federal regulations and applying the criteria of *Ferrell v. Baxter,* 484 P.2d 250, 263 (Alaska 1971), and *Bailey v. Lenord,* 625 P.2d 849, 856 (Alaska 1981), we conclude that the superior court could properly adopt 30 C.F.R. 56.14–26 (unsafe equipment shall be removed) and 30 C.F.R. 56.18–20 (employee shall not be left alone in hazardous work conditions) as codified standards of due care.[12]

### B. *Did Grothe Breach Any Duty of Care Owed To Olafson?*

Unsafe Equipment

■ The superior court found that the drill provided by Grothe had a defectively weak hydraulic system which prevented the operator from using the normal procedure to change the position of the connecting pins. Two witnesses testified that the hydraulics on the drilling machine used by Olafson were weak and would sometimes be unable to lift the boom. Olafson testified that he had previously warned Grothe that the hydraulic system was not working properly and that Grothe had promised to have it repaired. Olafson stated that if the hydraulics had been working properly, he would have been able to use the normal method and thus would not have been injured. Grothe claimed that the hydraulics were strong enough to raise the boom and that he had been able to change the position of the pins using the normal method. He testified that after the accident the machine had been used in other jobs and that there had been no problems with the hydraulics. On the other hand, Grothe admitted that Olafson had told him about a problem with the hydraulics and that Grothe had thought that the weakness was due to an air leak in the motor. Grothe stated that he had tried to repair the system but that his repairs did not seem to have made very much difference. Grothe also admitted that the drive chain on the drill had not broken during subsequent jobs. Thus, the problem Olafson had faced may simply not have arisen on these later jobs.

We think there was sufficient evidence in the record to support the superior court's finding that the drill's hydraulic system was defective and that Grothe had notice of this problem. Grothe's failure to repair the drill adequately (or to provide a replacement) constituted a breach of his common law and statutory duty to provide Olafson with safe equipment.[13]

---

12. In order to adopt a statutory standard of care the superior court must find that the plaintiff is within the class protected by the statute and the harm/injury which occurred was the type which the statute was intended to protect against. *Ferrell v. Baxter,* 484 P.2d 250, 263 (Alaska 1971); Restatement (Second) of Torts 286 (1965). The court must also find that the statute/regulation prescribes specific conduct rather than merely a general or abstract duty of care. *Bailey v. Lenord,* 625 P.2d 849, 856 (Alaska 1981).

13. The superior court also found a breach in Grothe's failure to provide Olafson with adequate assistance. There is sufficient evidence in the record to establish that the presence of an assistant would probably have prevented the accident since an assistant would have observed the movement of the hammer and would have been able to warn Olafson before the mast became unbalanced. Since Olafson was an employee, we conclude that there was sufficient evidence in the record to support the superior court's conclusion that Grothe negligently failed to provide adequate assistance.

C. *Was the harm to Olafson foreseeable?*

Grothe claims that the chain of proximate causation was broken because: 1) he was not aware of any defect in the machinery; 2) he was not aware that the chain had broken so he could not have known Olafson needed assistance; 3) Olafson's method of inserting the pin (driving the drill forward with the mast braced against the rock) was unforeseeable. We find all of these arguments devoid of merit, and therefore affirm the superior court's ruling that Olafson's injuries were a foreseeable result of the defect in the drill and the lack of assistance given to Olafson.[14]

III. *Did The Superior Court Err In Ruling That The Defense of Comparative Negligence Was Not Available?*[15]

■ In its final decision, the trial court ruled that under AS 23.30.055 and AS 23.-30.080, Grothe was not entitled to assert the defense of comparative negligence to reduce Olafson's recovery. In the initial decision, the court had found Olafson to be twenty percent negligent and had reduced the award accordingly. Grothe argues that the defense of comparative negligence is available under AS 23.25.020.

AS 23.30.055 provides that when an employer fails to secure payment of compensation, an injured employee may elect to claim compensation or to maintain an action at law for damages. In such an action, the employer "may not plead as a defense that . . . the injury was due to the contributory negligence of the employee." Further, AS 23.30.080 states that if the employer failed to carry insurance, the employer "may not escape liability for personal injury . . . sustained by an employee when the injury sustained arises out of and in the usual course of the employment because . . . (3) the employee was negligent . . . ." In contrast, AS 23.25.020 provides that in an action brought by the employee against the employer, "the fact that the employee may have been guilty of contributory negligence does not bar a recovery where his contributory negligence was slight and the negligence of the employer was gross in comparison, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to the employee."

Olafson relies heavily on *Carroll v. Universal Irrigation, Inc.,* 18 Wash.App. 854, 573 P.2d 373 (Wash.App.1977), to support his argument that AS 23.30.055 and AS 23.30.080 override AS 23.25.020 and deny Grothe any comparative negligence defense. In *Carroll,* a Washington appellate court held that an employer who fails to secure worker's compensation insurance is barred from asserting the employee's negligence as a defense. *Id.* at 377. The court reasoned that the statutory provisions which deprive a non-complying employer of certain common law defenses were intended to induce employers to comply with the worker's com-

---

14. The superior court found the defect to be in the drill's hydraulic system and the record shows that Grothe was aware of the problems with the hydraulics. Grothe had notice that the chain would break and was in need of repair. Thus it was foreseeable that a 74 year-old man engaged in drilling and blasting (with a defective machine) would need assistance at some point. Although Olafson's method of raising the mast to repair the drill was not a standard procedure, it was one of the methods which operators used in attempting to align the pin holes on the drill. Given this evidence and Grothe's admitted knowledge of the workings of this drilling machine, we hold that the superior court did not err in concluding that the method used by Olafson was foreseeable in light of the drill's defective hydraulic system.

15. Grothe asserts that the superior court erroneously imputed Olafson's negligence to Grothe. There was no imputation of negligence in this case. Grothe was held independently liable for the faulty hydraulic system and his failure to provide adequate assistance to Olafson.

Similarly, we find no merit in Grothe's contention that the superior court erroneously concluded that 30 C.F.R. 56.18–20 required a chuck tender to assist Olafson. The superior court concluded that "the defendant was negligent in allowing Olafson to work alone under hazardous conditions." No direct or implied reference was made to 30 C.F.R. 56.7–9 or to a requirement for a chuck tender.

pensation system. *Id.* at 376.[16] The court specifically rejected the defendant's argument that AS 23.25.020 preserved the defense of comparative negligence for the employer. *Id.* at 377 n. 4.

We think the *Carroll* decision is correct and note with approval the following statement from that decision:

> A showing of comparative negligence to diminish plaintiff's award would allow the employer to escape liability for a portion of plaintiff's injuries. This would be inconsistent with the above noted policy and purpose of the workmen's compensation laws.

*Id.* at 377. Thus, we hold that the superior court did not err in its conclusion that comparative negligence was inapplicable in the context of this litigation.[17]

IV. *Was The Court's Finding That Olafson Was Disabled By The Injury Erroneous?*[18]

The superior court concluded that Olafson was disabled due to the recurrent pain associated with his injured ribs. Dr. Loren Halter's testimony supports this determination.[19] However, other physicians testified that Olafson was not disabled or that his inability to work was caused by his pre-existing bronchial condition or his obesity. Under Civil Rule 52(a), the superior court's findings shall not be set aside unless clearly erroneous.[20] On this record, we are

16. *Carroll v. Universal Irrigation, Inc.*, 18 Wash.App. 854, 573 P.2d 373 (Wash.App.1977).

17. We are unpersuaded by the several arguments that Grothe advances in support of application of comparative negligence. We deem it sufficient to address only one of his arguments. Grothe claims that under the general rules of statutory construction the three statutes should be construed so as to give effect to each of them, citing *State v. Green*, 586 P.2d 595, 603 (Alaska 1978). He asserts that this can be accomplished by holding that AS 23.30.-055 and AS 23.30.080 only preclude the defense of contributory negligence and not the comparative negligence defense provided by AS 23.25.-020 of the Employers' Liability Act. The problem with this approach is that it glosses over an apparent direct conflict between the statutes. While AS 23.30.055 only mentions contributory negligence, AS 23.30.080 is couched in broader terms and seems to bar any use of employee negligence as a defense. Where the provisions of the Employers' Liability Act (AS 23.25.010–.040) conflict with those of the Worker's Compensation Act we have held that the latter prevail. *Haman v. Allied Concrete Products, Inc.*, 495 P.2d 531 (Alaska 1972); *Gordon v. Burgess Construction Co.*, 425 P.2d 602 (Alaska 1967).

18. In conjunction with this specification of error, Grothe asserts that the superior court failed to make findings of fact regarding Olafson's disability. Civil Rule 52(a) provides that in actions tried without a jury, the court, in rendering its decision, shall set out specific findings of fact and conclusions of law. The trial court's duty is to make findings sufficient to give a clear understanding of the basis of its decision in order to enable an intelligent review on appeal. *State v. I'Anson*, 529 P.2d 188 (Alaska 1974).

Grothe argues that the superior court made no finding as to the cause of Olafson's disability. He claims that given the conflicting testimony of the medical experts a specific finding on the disability should have been made. The parties' arguments on Olafson's alleged disability break down into three main positions: 1) that Olafson's injuries were healed and he was free from disability; 2) that Olafson was disabled but his disability was due to pre-existing bronchitis; or 3) that Olafson was disabled by the recurrent pain of the unhealed fractured ribs. The superior court found that Olafson suffered broken ribs and severe pain as a result of the accident and that Olafson's injuries caused a loss in his future earning capacity. In our opinion the superior court's findings regarding Olafson's disability are stated with sufficient specificity to satisfy the requirements of Civil Rule 52.

19. Dr. Halter conducted several examinations of Olafson. On the basis of his examinations, including X-rays, he testified that Olafson's rib fractures had not healed properly and that considering Olafson's age they would not heal in the future. Dr. Halter stated that Olafson complained of pain, that this pain was caused by the unhealed ribs and that they could prevent him from resuming his normal activities. Dr. Halter further testified that he could not state whether Olafson's prior bronchitis was severe enough to disable Olafson but that it was probably aggravated by the rib fractures.

20. A clearly erroneous finding is:

> [O]ne which leaves the supreme court with a definite and firm conviction on the entire record that a mistake has been made, although there may be evidence to support the finding.

*Mathis v. Meyeres*, 574 P.2d 447, 449 (Alaska 1978), quoting *Frontier Saloon, Inc. v. Short,*

not persuaded that the superior court's findings relating to Olafson's disability are clearly erroneous.[21]

## V. *Did The Superior Court Err In Refusing To Grant Grothe's Motions For Relief From Judgment?*

■ Grothe filed a Rule 60(b) motion for relief from judgment on the grounds of newly discovered evidence. Specifically, Grothe sought to reopen the trial in order to present the testimony of Dr. George Stewart on the issue of Olafson's alleged disability. The superior court summarily denied the motion.

*Montgomery Ward v. Thomas,* 394 P.2d 774 (Alaska 1964), sets out the standard for granting a new trial on the basis of newly discovered evidence:

> These requirements are that the evidence (1) must be such as would probably change the result on a new trial; (2) must have been discovered since the trial; (3) must be of such a nature that it could not have been discovered before trial by due diligence; (4) must be material; (5) must not be merely cumulative or impeaching.

*Id.* at 776. Although Grothe filed a Rule 60(b) motion for relief from judgment rather than a Rule 59 motion for a new trial, we have indicated that when the underlying ground is "new evidence" the analysis is similar. *Patrick v. Sedwick,* 413 P.2d 169, 178 (Alaska 1966).[22]

The new evidence in this case consists of the testimony of Dr. Stewart, who prepared one of the reports admitted in evidence at trial. Dr. Stewart indicated in his affidavit

that if permitted he would testify that in his opinion: 1) Olafson's ribs were substantially healed by the time of trial, June 1980, and perhaps as early as April 1979; 2) that Olafson had not exhibited any signs of pain or rib fractures during his preliminary testing in May 1980; and 3) that there was no indication of any lung damage or defect. This testimony would be based on his review of the X-rays and prior lab reports. Olafson asserts that this testimony does not contradict the testimony of Dr. Halter and would therefore not alter the result. If believed, Dr. Stewart's testimony would indicate that Olafson was fully recovered, with little or no pain and normal mobility.

Olafson asserts that Dr. Stewart's testimony does not· qualify as new evidence, since his identity was known to Grothe's counsel well before the trial and all parties were aware that his report was to be admitted at trial. Grothe argues that he only became aware of the need for Dr. Stewart's testimony after Dr. Halter presented his opinion that Olafson's ribs had never healed and were the main source of Olafson's continuing disability. Grothe claims he was surprised by Dr. Halter's testimony and by the admission of the X-rays which were taken the day before trial. Olafson responds that Grothe's claims of surprise are unjustified and that he has failed to satisfy the due diligence requirement for the following reasons: 1) Grothe's counsel gave no indication of surprise at trial and made no motion for a continuance to attempt to ascertain if Dr. Stewart could testify; 2) prior to trial, Grothe's counsel was provided with a copy of Dr. Halter's report which contained the same conclusions Dr. Halter

557 P.2d 779, 781–82 (Alaska 1976) (per curiam).

**21.** Grothe also contends that additional expert testimony was needed to relate Olafson's rib fractures to his alleged disability and that there was not any specific expert testimony establishing a connection between this rib injury and the disability. In our view, Grothe's claim that there was no expert testimony connecting Olafson's rib injuries to his reduced earning capacity is a reiteration of his argument that the bronchitis is the source of Olafson's disability and that there was insufficient evidence to demonstrate that the rib fractures aggravated

the bronchitis. Inherent in our conclusion that the superior court's findings pertaining to Olafson's disability were not clearly erroneous is our conclusion that Dr. Halter's expert testimony established the requisite evidentiary base for the court's findings relating to disability.

**22.** Alaska R. Civil Procedure 60(b)(2) provides that the court may relieve a party from a judgment where:

> Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) ....

presented in his testimony; 3) Grothe's counsel had ample opportunity to depose Dr. Halter or Dr. Stewart but neglected to do so; and 4) Grothe's counsel made no attempt to submit this new evidence in the six-week period in which the court had the matter under advisement. On the basis of the foregoing, we would conclude that Grothe failed to demonstrate that the evidence could not have been obtained upon diligent investigation.

Finally, Olafson argues that Dr. Stewart's testimony was cumulative to the testimony of Dr. Eufemio and Dr. Johnson. Both physicians testified that Olafson's rib injuries from the accident were healed and would not restrict his present or future working ability. Grothe admits that Dr. Stewart's testimony would be similar to the other physicians, but claims that it would not be cumulative because of Dr. Stewart's expertise in this area.

■ The standard for review of an order denying a Rule 60(b) motion is whether the superior court abused its discretion. Reversal is justified only if this court concludes the trial court was clearly mistaken. *McCracken v. Davis*, 560 P.2d 771 (Alaska 1977). We hold that the superior court's denial was well within its discretion.

AFFIRMED.

COMPTON, Justice, concurring in part, dissenting in part.

Although I otherwise agree with the court's resolution of this appeal, I disagree with the conclusion that the superior court did not err in finding that Olafson was an employee of Grothe's, and I therefore also disagree with the conclusion that Olafson's recovery should not be reduced by the amount of his comparative negligence.

As the court indicates, the appropriate test by which to determine whether Olafson was an employee or an independent contractor is that which we set forth in *Ostrem v. Alaska Workmen's Compensation Board*, 511 P.2d 1061, 1063 (Alaska 1973):

With reference to the character of claimant's work or business the factors are: (a)

the degree of skill involved; (b) the degree to which it is a separate calling or business; and (c) the extent to which it can be expected to carry its own accident burden. The relationship of the claimant's work or business to the purported employer's business requires consideration of: (a) the extent to which claimant's work is a regular part of the employer's regular work; (b) whether claimant's work is continuous or intermittent; and (c) whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of the particular job.

Focusing first on the character of Olafson's work, it is apparent that Olafson's work both involved special skills and was a "separate calling" from Grothe's business. Thus, the first two factors indicate that Olafson was an independent contractor rather than an employee. The third factor to be considered when focusing on the character of Olafson's work is the extent to which Olafson could be expected to carry his own insurance. The superior court concluded that the inherent danger of Olafson's work with dynamite made it economically unreasonable to expect Olafson to obtain his own insurance. This factor, according to the court, weighs in favor of considering Olafson an employee. There is no indication, however, that any evidence was presented to the court establishing whether or not persons performing the same type of work as Olafson obtain their own insurance. Similarly, there is no indication of evidence establishing how much it would have cost Olafson to obtain his own insurance and what percentage of his compensation the cost of insurance would have been. It therefore appears that there was no evidentiary basis for the court's finding that it was unreasonable to expect Olafson to obtain his own insurance. If one is to engage in idle speculation, it makes as much sense, if not more, to assume that Olafson was provided sufficient compensation for his inherently dangerous work to permit him to obtain his own insurance.

The next step in the analysis is to examine the relationship between Olafson's work and Grothe's business. It is undisputed that Olafson's work was intermittent in nature. The short duration of his work for Grothe indicates that he was "contracting for the completion of the particular job." *Ostrem,* 511 P.2d at 1063. Both of these facts strongly suggest that Olafson was an independent contractor rather than an employee. The final consideration is "the extent to which claimant's work is a regular part of the [purported] employer's regular work." *Id.* The superior court concluded that drilling and blasting was a regular part of Grothe's business because Grothe had previously been involved in extracting rock in the course of developing subdivisions. The court therefore found that Olafson's work was a regular part of Grothe's regular work. I believe this misinterprets the test. As we indicated in *Ostrem,* it is not whether the general type of work performed is a regular part of the employer's or contractor's work, but whether the individual in question regularly works for the employer or contractor. "Does he work for many people, 'on call', for a few businesses, or for a single employer?" *Id.* at 1064 n. 5. Olafson did not regularly work for Grothe or function as a regular part of Grothe's business. Instead, he worked for Grothe on only two prior occasions. The rest of the time he worked for various other contractors.

I believe that all of the facts in this case indicate that Olafson was an independent contractor and not an employee of Grothe's. The "significant factors" relied upon by this court in affirming the superior court on this "extremely close" question are the supposed unreasonableness of requiring Olafson to provide his own insurance and "the general trend towards liberalizing the scope of workers' compensation coverage." 659 P.2d at 606 & n. 10. These are merely policy considerations, which I believe could be sufficient to tilt the scales in favor of finding employee status if some facts indicated employee status while other facts indicated independent contractor status. I do not believe, however, that they are suffi-cient to support a finding of employee status when all of the facts contradict this finding, as they do in this case. Accordingly, I believe the superior court erred in finding that Olafson was an employee of Grothe's, rather than an independent contractor.

This does not effect Olafson's claim against Grothe, except as to the issue of whether comparative negligence can be raised by Grothe as a defense to the action. We have repeatedly held that an owner or general contractor is liable for his own negligence that causes injury to his independent contractors and their employees. *Sloan v. Atlantic Richfield Co.,* 552 P.2d 157, 160 (Alaska 1976). *See also Everette v. Alyeska Pipeline Co.,* 614 P.2d 1341, 1347 (Alaska 1980); *Hammond v. Bechtel Inc.,* 606 P.2d 1269, 1274 (Alaska 1980); *Hobbs v. Mobil Oil Corp.,* 445 P.2d 933, 934 (Alaska 1968). I agree with the conclusion that the superior court did not err in finding that Grothe was negligent toward Olafson and that this negligence resulted in Olafson becoming disabled. Thus, I believe the court properly determined that Olafson was entitled to recover damages from Grothe.

The superior court initially determined that Olafson's recovery should be reduced by twenty percent, which reflects the amount of Olafson's comparative negligence as determined by the court. It subsequently ruled, however, that Grothe was not entitled to assert the defense of comparative negligence because Grothe had failed to carry insurance at the time of Olafson's accident. On appeal, Grothe argues that the court erred in making this ruling. I agree on the basis of my conclusion that Olafson was not an employee. The statutory provision that an employer may not escape liability because of the employee's negligence if the employer failed to carry insurance at the time of the injury is only applicable if the injured person was an employee. AS 23.30.055, AS 23.30.080. In view of my conclusion that Olafson was an independent contractor and not an employee, I would hold that it is irrelevant that Grothe was not carrying insurance at the

time of the accident. I would accordingly order Olafson's recovery to be reduced by the amount of his comparative negligence, but would otherwise affirm the judgment of the superior court.