**Cherry CONGER, Appellant,**

v.

**Arthur Terry CONGER, Appellee.**

No. S–8052.

Supreme Court of Alaska.

Dec. 19, 1997.

Alan J. Hooper, Law Office of Alan J. Hooper, Fairbanks, for Appellant.

Bonnie J. Coghlan, Fairbanks, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

PER CURIAM.

### I.  INTRODUCTION

Terry Conger sought and was granted modification of a 1985 custody agreement. Cherry Conger appeals, seeking to reverse the superior court's denial of her Civil Rule 60(b) Motion to Set Aside Order Modifying Custody, its denial of her Motion to Accept Late Filed Opposition, and its Order Modifying Custody.  We reverse.

### II.  FACTS AND PROCEEDINGS

In 1980 Cherry Diane Treat and Arthur "Terry" Conger were married in Phoenix, Arizona.  In 1981 Cherry gave birth to their only child, Candy Diane.  Cherry and Terry were divorced in 1985.  Pursuant to a child custody and support agreement, Cherry was awarded custody of Candy.  Terry agreed to pay Cherry $300 per month in child support. After the divorce Cherry lived in both Fairbanks and Arizona.  She now lives in Phoenix, while Terry lives in Fairbanks.

According to Terry's affidavit, Candy lived with him in Fairbanks from September 1989 through May 1992.  Candy then lived with Cherry in Fairbanks until February 1993. She lived with Cherry's mother from February 1993 until April 1996.  Candy has been living with Terry and his present wife in Fairbanks since then.

In January 1997 Terry filed, in Fairbanks superior court, motions to modify custody, to restrain removal of Candy from Alaska, and to seal the file.  He also filed supporting memoranda, affidavits, and related papers. On January 8 Cherry was served with these papers, by certified mail, in Phoenix.  On January 16 Terry filed a motion for expedited consideration of his motion to modify custody, serving it on Cherry by express mail addressed to Cherry in Phoenix.

Cherry retained Fairbanks counsel, who appeared on her behalf on January 17.  On January 21 Cherry's counsel filed a non-opposition to the motion for an order restraining removal of Candy from the State, stating that "[Cherry] realizes that her daughter wants to remain in Fairbanks during the remainder of the school year and is respectful of that wish."  On the same day Cherry's counsel filed an opposition to the motion for expedited consideration.

On January 23 Cherry and Terry, through counsel, filed a Stipulation and Order which recited that they "stipulate[d] and agree[d]

that Plaintiff Cherry Conger may have an additional fifteen (15) days within which to file her Opposition to Defendant's Motion to Modify Custody." The superior court signed the order on January 24. It was filed and served on counsel on January 27. The Stipulation and Order did not state on what date the additional fifteen days was to commence running.[1]

On February 5 the court denied the motion for expedited consideration and granted the unopposed motion to seal the file.

On February 10 the court entered an order granting Terry's motion to modify the custody agreement and ordering Cherry to pay fifty dollars per month in child support payments.[2] The order was filed on February 11 and served on counsel February 13.

On February 10, before learning of the order granting modification, Cherry attempted to file her Opposition to Motion to Modify Custody. The court clerk's office refused to file the opposition, stating that "[y]our Oppo to Mtn to Modify cannot be considered unless you file a Mtn to accept late filing."

On February 19 Cherry filed a motion pursuant to Rule 60(b) to set aside the order modifying custody, and a motion to accept a late-filed opposition. In support of the motions, Cherry's counsel stated that he had assumed the fifteen-day extension for filing began on January 27, the day the order granting the extension was stamped and filed, which he refers to as the "effective date" of the order. If the fifteen-day extension had begun to run from January 27, Cherry's opposition would have been due on

February 11, one day after Cherry attempted to file her opposition.

The superior court denied Cherry's motion to set aside the order and refused to accept her "late-filed" opposition. The court stated: "It is disingenuous [to] claim that the agreement to extend runs from an unknown date in the future when a judge signs off. The opposition was 9 days late."

## III. DISCUSSION

### A. Standard of Review

■ We review an order denying a Civil Rule 60(b) motion to determine if the trial court abused its discretion. *See Benedict v. Key Bank of Alaska,* 916 P.2d 489, 491 (Alaska 1996). Reversal of the trial court "is justified only if this court concludes the trial court was clearly mistaken." *Grothe v. Olafson,* 659 P.2d 602, 611 (Alaska 1983).

### B. Did the Superior Court Abuse Its Discretion in Denying Cherry's Civil Rule 60(b) Motion to Set Aside the Order Modifying Custody and Accept Her Late–Filed Opposition?

Pursuant to Alaska Civil Rule 60(b)(1), Cherry moved to set aside the Order Modifying Custody and to accept her late-filed opposition.

Civil Rule 60(b)(1) provides: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect."

1. Counsel's failure to specify the date the fifteen-day extension was to commence running, or the date that the opposition was due, resulted in unnecessary confusion and litigation. The appeal that resulted from counsel's oversight should serve as an example of what litigants should not do when seeking an extension. Rather, they should specify when the additional time begins to run, and/or the due date of the document, given the time extension.

2. The Order reads:
   Defendant having moved this court to modify the custody, visitation and support in the above entitled matter, this court having considered the matter and being duly advised;

IT IS HEREBY ORDERED that the terms of the Decree of Divorce entered July 15, 1985, be modified to provide that Defendant shall have primary physical custody of the parties' minor daughter, Candy Diane Conger, subject to rights of visitation in Plaintiff.
   IT IS FURTHER ORDERED that Plaintiff shall pay Defendant child support in the amount of $50.00 per month through the Child Support Enforcement Division. Support shall continue while Candy Diane Conger is 18 years old if she is (1) unmarried, (2) actively pursuing a high school diploma or equivalent level of technical or vocational training, and (3) living as a dependent with the obligee parent.

Cherry argues that her assumption that the fifteen-day extension began on January 27 was a mistake, and that Rule 60(b)(1) provides the remedy.[3] She states that "[t]he Stipulation and Order that the parties presented to the Court was not a model of clarity. It left ambiguous the question as to what date the 15 days was to be added." Terry does not address whether it was excusable neglect for Cherry to assume that the fifteen-day extension commenced running from the date the order was stamped and filed, and not from the date it was signed or from the date it was initially due.

Cherry's opposition may have been late, depending on what date the fifteen additional days commenced to run.[4] Cherry was served with the moving papers on January 8. Pursuant to Rule 77(c), and the notice served on Cherry, she had ten days following service to file her opposition to the motion to modify custody. However, on January 23 Cherry and Terry stipulated and agreed that Cherry would have an "additional" fifteen days within which to file her opposition. It was "SO ORDERED" by the court on January 24. The order was filed and served on the parties on January 27. Arguably, Cherry was to have filed her opposition as early as February 4, fifteen days after the original due date of January 20. At the latest, Cherry had until February 11 to file her opposition, fifteen days after the court's order was filed and served on the parties. *See* Alaska Civil Rule 58.1(a)(2) ("The date of entry of a written order not preceded by an oral order is the date the written order is signed unless otherwise specified in the order."); *Johnson v. Siegfried,* 838 P.2d 1252, 1255 n. 4 (Alaska

1992) ("Written orders are considered effective on the date they are *entered,* that is, the date on which the order is signed."). Cherry, however, filed her opposition on February 10.

■ We conclude that Cherry's possible miscalculation of the date on which the "additional" fifteen-day period expired constituted excusable neglect.[5] The Kansas Supreme Court addressed a similar situation in *Jenkins v. Arnold,* 223 Kan. 298, 573 P.2d 1013 (1978). In *Jenkins,* counsel miscounted the time in which he could file an answer and a default judgment was entered against his client. The court stated:

> [w]e are inclined to agree with counsel that a proper showing was made that the default was not the result of "inexcusable neglect".... The failure of counsel to answer would appear to be that type of excusable inadvertence or neglect common to all who share the ordinary frailties of mankind.

*Id.,* 573 P.2d at 1016. Other courts have similarly held that a party's failure to timely file constitutes excusable neglect. *See INVST Fin. Group, Inc. v. Chem–Nuclear Sys., Inc.,* 815 F.2d 391, 400 (6th Cir.1987) (holding that because the party "offered a credible explanation for the delay that did not exhibit disregard for the judicial proceedings," filing their answer late was excusable neglect); *United Coin Meter v. Seaboard Coastline R.R.,* 705 F.2d 839, 845 (6th Cir. 1983) (holding that a misunderstanding as to when the extension was to begin, which resulted in a late filing and a default judgment,

---

3. Although Cherry labels her time miscalculation as a "mistake," the proper analysis under Rule 60(b)(1) is whether the time miscalculation was excusable neglect.

4. Neither the court, in its order, nor the parties, in their briefing, venture to opine when Cherry was to have initially filed her opposition, from what date the "additional" 15 days was to have commenced running, or on what date the 15–day period expired. Cherry was served with Terry's motion on January 8. She had 10 days within which to file her opposition. It would have been due January 18, but since that was a Saturday, it was due Monday, January 20. If the "additional" 15–day period commenced running the following day, it expired February 4. If it com-

menced on January 23, the day the Stipulation and Order was signed by the parties, it expired on February 7. If it commenced on January 24, the date the court signed the order granting the "additional" time, it expired February 10. If it commenced on January 27, the date the order was filed and served on the parties, it expired February 11. An opposition filed February 10 was either 6 days late, 3 days late, on time, or 1 day early. There would appear to be no scenario which would result in the opposition being "9 days late."

5. In light of our Rule 60(b) resolution, we need not address the correctness of the Order Modifying Custody.

was excusable neglect because the record did not show "that the default occurred as the result of willful conduct").

Cherry was an out-of-state party who promptly retained counsel in Fairbanks. Counsel promptly entered his appearance on Cherry's behalf and filed a number of papers addressing the various motions filed by Terry. Cherry's prompt participation in the proceedings, and the fact that her opposition was at most six days late, if late at all, support the conclusion that her arguable tardiness showed neither a disregard for the proceedings nor a willful failure to proceed. Further, in view of Cherry's willingness to abide by the status quo until Candy's school term ended four months later, no need for haste was apparent. The court's precipitous action in granting Terry's motion to modify custody is inexplicable. It also nearly guaranteed a time-consuming appeal on a purely technical issue.

■ Resolution of a custody dispute should not reach its final conclusion in a manner that effectively precludes one party from presenting his or her case. Courts must recognize that the issue is the best interests of the child, or children, and not merely a determination of the private rights of nominal parties. Moreover, it is critical that the court be as fully informed as possible when determining the best interests of a child.

## IV. CONCLUSION

We conclude that the superior court abused its discretion by not granting Cherry's Rule 60(b) motion. We REVERSE the superior court's denial of Cherry's Rule 60(b) motion to set aside the order modifying custody, direct the superior court to accept her late-filed opposition, and REMAND the case for further proceedings on Terry's motion to modify custody.